**Vernon E. BERG, III, Plaintiff,**

v.

**W. Graham CLAYTOR, Jr., Defendant.**

**Civ. A. No. 76–944.**

United States District Court,
District of Columbia.

May 27, 1977.

E. Carrington Boggan, New York City, for plaintiff.

Vincent B. Terlep, Jr., Dept. of Justice, Arthur P. Leary, Dept. of Navy, Washington, D. C., for defendant.

MEMORANDUM OPINION AND ORDER

GESELL, District Judge.

Plaintiff Vernon Berg was involuntarily discharged as an officer of the United States Navy, following an administrative hearing, because of homosexual acts he committed while in the Service. He now claims that the discharge was unlawful, and seeks reinstatement and back pay. Berg asserts that homosexual activity is not, under the Constitution, a legitimate basis for discharge. He also contends that the administrative hearing was procedurally defective under the Due Process Clause and under the Navy's own regulations. Finally, he claims that the Navy discharge regulations were not validly promulgated and are void.

There are no material facts in dispute, and the matter is now before the Court on cross-motions for summary judgment after review of the administrative record and additional data submitted by the parties. The issues were fully briefed and argued.

## I. BACKGROUND

Plaintiff Berg is a graduate of the United States Naval Academy at Annapolis. He was an Ensign on active duty with the U.S.S. Little Rock in Gaeta, Italy, when, on July 11, 1975, the Commanding Officer requested a Naval Investigation Service ("NIS") inquiry into his sexual activity. During the NIS investigation an enlisted man serving on the Little Rock accused Ensign Berg of having attempted to perform a homosexual act upon him. Berg signed a statement admitting to participation in homosexual activity both before and

during his service in the Navy. He did not admit to the alleged encounter with the enlisted man from the Little Rock. On July 24, 1975, Berg was notified that administrative proceedings for his discharge were being initiated. The next day he submitted his resignation from the Navy. After spending three weeks on duty in the Mediterranean, Berg was transferred to Norfolk, Virginia, in anticipation of dismissal. But on November 4, 1975, Berg withdrew his resignation.

Thereafter an Administrative Discharge Board was convened on January 19, 1976, to consider Berg's case. The basic policy of the Navy towards homosexuals is contained in SECNAVIST 1900.9A, which states in part:

Members involved in homosexuality are military liabilities who cannot be tolerated in a military organization.

This seemingly mandatory discharge policy has, at least in theory, been amended to make discharge discretionary. *See Champagne v. Schlesinger*, 506 F.2d 979 (7th Cir. 1974). The Board which considered plaintiff's dismissal was clearly instructed that it had discretion to recommend plaintiff's retention in the Navy.

The Board had two issues before it. It was to determine whether or not plaintiff had committed homosexual acts violating Navy regulations. If so, it was instructed to make an advisory recommendation as to whether or not Berg should be retained in the Service despite such activity. Berg continued to deny that he had ever engaged in homosexual activity with naval personnel, but he did freely admit that he was bisexual and had committed numerous homosexual acts while in the Navy. This admission brought him completely within the prohibitions of the regulations. The Board recommended that Berg be discharged under other than honorable conditions. The Board report was reviewed and endorsed by the Commandant of the Sixth Naval District. On April 12, 1976, the Chief of Naval Personnel recommended that Berg be discharged, and on May 20 this recommendation was approved by the Assistant Secretary of the Navy. Berg filed this action on May 28, 1976, a temporary restraining order was denied, and on June 3, 1976, he was discharged under conditions other than honorable. On April 14, 1977, the Secretary of the Navy recommended that Berg's discharge be upgraded to honorable. This has now been done.

## II. CONSTITUTIONALITY OF DISCHARGE BASED ON HOMOSEXUAL ACTIVITY

Plaintiff initially contends that a discharge from the Navy based on homosexual activity violates his rights to freedom of association and privacy.

The dismissal of plaintiff due to his homosexual activity places no restriction on his right to associate with whomever he chooses, and clearly does not contravene the First Amendment. However, plaintiff's claim that his right to privacy has been invaded is more troublesome. The Supreme Court has explicitly recognized the right of privacy in sexual matters by repeatedly prohibiting interference by the state with relationships between men and women. *See, e. g., Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). On the other hand, it has sustained the right of the state by statute to place criminal sanctions upon forms of sexual conduct between persons of the same sex even where that conduct occurs out of public view. *Doe v. Commonwealth's Atty. for City of Richmond*, 403 F.Supp. 1199 (E.D. Va.1975), aff'd, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976). In the light of these precedents the Court is constrained to conclude that an individual's right to privacy does not extend to homosexual conduct even where it occurs in private between consenting adults.

Finally, plaintiff says that the Navy policy of discharging those who have committed homosexual acts while in the Service is irrational, thus depriving him of

substantive due process under the Fifth Amendment. Since the Navy policy does not impinge plaintiff's privacy or other fundamental constitutional rights, the Court must sustain the policy if it is rationally related to a legitimate governmental objective. *See Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). The Navy does not argue that it is attempting to maintain moral standards, and it no longer argues that acknowledged homosexuals are security risks. It says simply that given the special tasks performed by the Navy, homosexuals present an obstruction to efficient operations. The Navy position is twofold. First, it contends that in a confined situation, such as aboard ship, enlisted men would react to a homosexual officer in such a way as to destroy the officer's credibility and his ability to command. The officer would be subject to ridicule and lack of respect, thus making him an ineffective leader. Second, this situation would compound the already severe pressures faced by all officers aboard ship, putting the homosexual officer in an unusually difficult position, thus further decreasing his effectiveness. The Navy says that as long as it is assigned its present fleet mission, once an officer's homosexuality is discovered, its policy of discharging homosexuals is justified. Plaintiff retorts that there are no valid studies to support this position, and that evidence in the record indicates that Ensign Berg did not have, and would not have, such problems.

■ Under *Kelley,* the plaintiff has the difficult task of demonstrating that the Navy's policy towards homosexuals is so irrational as to be arbitrary. 425 U.S. at 248, 96 S.Ct. 1440, citing *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Plaintiff's evidence that he was a good officer and would not necessarily fall victim to the problems described

by the Navy is not to the point. The issue is whether the concerns expressed by the Navy would apply to so few officers that a general policy against homosexuality is irrational. Plaintiff does not present any evidence that the difficulties cited by the Navy are fanciful. While there are no "studies" in the record about the problems homosexuals present in the Navy, there is testimony from a number of naval officers demonstrating that the concerns have a basis in fact and are not conjectural. This testimony generally supports the Navy's position. Given the extreme deference appellate courts have steadfastly given military procedures which were subject to constitutional attack, the Court must conclude that the Navy regulation has not been shown to be irrational. *See, e. g., Committee for G. I. Rights v. Callaway,* 518 F.2d 466 (D.C. Cir. 1975), and cases cited therein. Thus plaintiff's challenge to the constitutionality of the Navy policy of discharging homosexuals must fail.[1]

## III. APPLICABILITY OF THE DUE PROCESS CLAUSE TO THE ADMINISTRATIVE BOARD HEARING

■ The Due Process Clause, of course, does not apply to every termination of Government employment. It applies only to those terminations that deprive an individual of "liberty" or "property." *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). *Roth* and its progeny indicate that a dismissal from Government employment infringes an individual's liberty where it would seriously harm his standing in the community or foreclose his future employment opportunities. *See Mazaleski v. Truesdell,* 562 F.2d 701 at 712 (D.C. Cir. 1977). The honorable discharge now accorded plaintiff by the Navy has removed the stigma associated with his termination.[2] The mere fact that the Secre-

---

1. The Court is aware of the claim that the Navy is acting unlawfully in even considering the reactions of others towards homosexuals. There are problems inherent in burdening a class of people because of the reactions they engender. However, where the class that is burdened is neither "suspect," nor engaged in constitutionally protected behavior, the Government may take the reactions of third parties into account in setting its policy.

2. There is no code or symbol connected with any papers or explanations available to prospective employees or the public that identify

tary of the Navy did not in his discretion consider plaintiff's military qualifications sufficiently exceptional or valuable to the Navy to justify retention despite the admitted homosexual activities does not create the kind of reputational injury or job foreclosure that requires a due process hearing. Thus his termination has not deprived him of liberty under the Due Process Clause.

There remains the issue whether plaintiff was deprived of property and was therefore entitled to a due process hearing. Generally an officer can be discharged only under regulations approved by the Secretary. Assuming what is by no means clear (see 32 CFR 714)—that even an officer with less than three years of active duty can be discharged only for "cause" set out in regulations—there is a property interest in that employment. Thus so long as the matter of cause is in dispute the requirement of due process is triggered and the expectation of continued employment must be recognized as a protected property right.

However, under Navy policy there can be no doubt that committing homosexual acts while in the Navy is cause for termination. Plaintiff has admitted to having performed homosexual acts while in the Service. Having admitted there was cause for dismissal, plaintiff's expectation of continued employment has been extinguished. Thus he had no property interest and no constitutional need for a due process hearing.[3] Cf. Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

Plaintiff argues that he was entitled to a due process hearing on the desirability of his retention in the Navy despite his admitted homosexual acts. It is true that the hearing board had the power to recommend plaintiff's retention. But the Board's opinion would have been merely advisory and the decision to retain lies in the sole discretion of the Secretary of the Navy. Plaintiff's hope for continued employment despite the existence of cause for dismissal was not enough to trigger the requirements of the Due Process Clause.[4] A due process hearing on this issue was not required.

## IV. VALIDITY OF THE ADMINISTRATIVE HEARING UNDER NAVY REGULATIONS

In his complaint plaintiff contends that his hearing before the Administrative Discharge Board was defective under Navy regulations. Although this point was not pursued in brief or at oral argument, the Court has thoroughly examined applicable Navy regulations.

The hearing envisioned in Navy regulations is a relatively informal one. See 32 CFR 714. While an officer is given the opportunity to rebut any charges that have been made against him, the strict procedural rules that characterize a courtroom are inapplicable. The procedural infirmities of which plaintiff complains are numerous, ranging from a failure to grant a continuance to bias in the hearing panel. But it is clear that most of these claims are frivolous given the type of hearing envisioned by the regulations. However, two issues deserve further comment.

Plaintiff asserts that the five members of his hearing Board were biased and should have been disqualified. On voir dire examination three members of the Board indicated that they could envision no circumstances under which it would be advisa-

---

the reasons underlying the honorable discharge.

3. A due process hearing is required before the Government finally deprives an individual of his property because it must be fairly determined whether the conditions allowing such a deprivation exist. Where it is admitted that such conditions exist the hearing would serve no constitutional purpose.

4. The case is unlike a parole revocation where a due process hearing may be required to determine both (1) whether a violation was committed, and (2) whether under all the circumstances parole should be revoked. In that situation, the individual has a continuing liberty interest in being free of incarceration. Here, there is no liberty interest at stake, and no property interest survives the admission of homosexuality. See Codd v. Velger, supra.

ble to retain a homosexual in the Service. The two other members of the Board indicated that they could only foresee a recommendation of retention if the homosexual officer were confined to shore duty. All five officers indicated, though, that they could keep an open mind in this case and would be willing to consider expert evidence on the feasibility of keeping homosexuals in the Navy.

Under the regulations governing the Board proceeding:

Although he has no right to challenge, the respondent may submit to the convening authority for appropriate action, any relevant matter which, in his view, indicates that a particular member or members should not sit on his case. 32 CFR 714.9(d)(2)(iii).

Plaintiff Berg submitted the Board members' statements to the convening authority with a request that the Board members be replaced. This request was denied. Thus the procedural requirements of the regulation were met. Navy regulations do not provide a substantive standard against which to evaluate a request to remove members of a Board. Since an officer has no right to challenge a Board member, and no standards are provided, the decision to replace rests within the discretion of the convening authority.

The regulations also provide that

A failure to comply with any of the procedural provisions of this section will not invalidate the results of any board of officers, except to the extent that may be required by a clear and affirmative showing, by the individual alleging error, of injury to a substantial right which was neither expressly or impliedly waived. 32 CFR 714.9.

While the rights expressly delineated in the regulation do not include the right to an impartial board (and, as noted, provides no right to challenge) the Court infers such a right from the regulations as a whole. *See* 32 CFR 714.9 generally. But without substantive guidelines the Court can only find that the convening authority violated regulations in not replacing members of the Board if it finds his decision arbitrary and an abuse of discretion. On the record presented the Court cannot make such a finding.

The Board members were not accused of bias in making a determination about whether Berg had participated in homosexual activities or to what extent such activities had taken place. It is only alleged that they could not fairly use their discretion to recommend his retention in the Navy. But each officer said that he could keep an open mind and would consider the expert testimony concerning homosexuality which Berg presented to the Board. Nor is it clear that under Navy policy it is inappropriate for these officers to bring preconceived policy notions to their deliberations about the advisability of retaining a homosexual in the Service. In this discretionary area the experience and views of members of the Board may be an important factor in reaching the final policy determination. In any case, the reviewing authorities had each Board member's statement before them and were in a position to discount the Board recommendation if these statements indicated improper bias under Navy policy. Thus the convening authority's decision not to replace Board members cannot be described as arbitrary, and the Court cannot send the matter back for rehearing on this basis.

█ Plaintiff also claims, and the Government admits, that the Board report was not reviewed by the convening authority as required by regulation. 32 CFR 714.9(g). Plaintiff had claimed that the convening authority, Admiral Rumble, Commander of the Fifth Naval District, was biased against him. At the close of the Board hearing Admiral Rumble disqualified himself and did not review the report. It was sent instead to the Commander of the Sixth Naval District and reviewed by him, although there are no regulations establishing such a procedure. As set forth above, Navy regulations allow setting aside a report of a board of officers only where there is a violation of a substantial right that has not been waived. The technical violation

that occurred in this instance impinges no substantial right of plaintiff, and in any case, such a right would have been waived by his request that Admiral Rumble recuse himself due to bias.

## V. VALIDITY OF THE DISCHARGE REGULATION

■ Plaintiff Berg's dismissal was effectuated under SECNAVIST 1920.6 which sets forth grounds and procedures for the discharge of naval officers. Berg asserts that this regulation was not signed by the President and is, therefore, void. *See* 10 U.S.C. § 6011. The Government admits that the regulation was not signed by the President. However, SECNAVIST 1920.6 was issued pursuant to 10 U.S.C. § 6392, which specifically indicates that an officer with less than three years' active service may be discharged under regulations prescribed by the Secretary of the Navy himself. Further, in *Reed v. Franke,* 297 F.2d 17 (1961), the Fourth Circuit held that 5 U.S.C. § 22, now 5 U.S.C. § 301, empowered the Secretary of Defense to issue regulations dealing with discharges. That statute was subsequently amended to authorize the head of each military department to issue such regulations. These two statutes provide adequate authority for the Secretary to issue the contested regulation. In any case, the President has statutory authority to delegate certain statutory functions, including the approval of Navy discharge regulations. *Reed v. Franke, supra,* at 24. The *United States Navy Regulations of 1948,* approved by President Truman, and under which SECNAVIST 1920.6 was issued, contains such a delegation. That delegation was not superseded, as plaintiff contends it was, by Executive Order 10621 issued by President Eisenhower in 1955. Thus the Secretary's approval of the challenged discharge regulation was sufficient.

## VI. ARBITRARY USE OF DISCRETION

■ Under Navy policy the decision whether to retain plaintiff in the Service after he admitted homosexual activity was within the discretion of the Secretary of the Navy. While the point was not strictly raised in the papers, it is clear that his discretion cannot be utilized in an arbitrary or capricious manner. *Cf. Knehans v. Callaway,* 403 F.Supp. 290 (D.D.C.1975); *Yee v. United States,* 512 F.2d 1383, 206 Ct.Cl. 388 (1975). At the very least the Secretary must have before him material that fairly portrays plaintiff's service record. *Id. See also Weiss v. United States,* 408 F.2d 416, 187 Ct.Cl. 1 (1969). There can be no doubt that in this case the Secretary had such material before him. Nor can it be said that the substance of the Secretary's decision was arbitrary. While it is clear that the plaintiff was a fine officer, there is nothing in his record that marks him as being highly unusual or especially valuable to the Navy. This Court has no basis for overturning the Secretary's judgment.

## VII. CONCLUSION

There is no legal basis for setting aside plaintiff's discharge. The decision to grant an honorable discharge is to be commended. However, it would be helpful for the Navy to clarify the considerations which apparently govern the circumstances under which a homosexual, as a matter of discretion, may be retained. Moreover, the records in recent homosexual cases demonstrate that physicians and psychologists differ widely concerning the causes and varied manifestations of homosexuality. Thus there is also a continuing need for the military establishment to be aware of further investigation in this area. In the final analysis there is, after all, an obligation to accommodate personnel policy to changing scientific knowledge and social standards to the fullest extent so long as conduct which threatens to interfere with defense objectives can be avoided.

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Plaintiff's third amended complaint is dismissed.

SO ORDERED.