Stephen SIMMONS, Sergeant,
United States Army

v.

Harold BROWN, Secretary of Defense; Clifford Alexander, Secretary of the Army; and Colonel Herd, Post Commander.

Civ. No. HM 80–1726.

United States District Court,
D. Maryland.

July 15, 1980.

Thomas W. Keech, Stephanie Klein, Dennis W. Carroll, Jr., Administrative Law Center, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiff.

Russell T. Baker, Jr., U. S. Atty. for the District of Maryland, Edward M. Norton, Jr., Asst. U. S. Atty., Baltimore, Md., Calvin M. Lederer, Captain, Judge Advocate Gen. Litigation Division, Dept. of the Army, Washington, D. C., for Harold Brown et al.

HERBERT F. MURRAY, District Judge.

Plaintiff is a staff sergeant presently serving on active duty in the United States Army with assignment at Fort Meade, Maryland. On June 27, 1980, the Commander of Headquarters Command at Fort Meade approved plaintiff's involuntary separation from active duty in accordance with Army Regulations (AR) 600–85 and 635–200, which authorize discharge for personnel who fail to participate satisfactorily in the Army alcohol rehabilitation program. On July 3, 1980 Sgt. Simmons filed a complaint for declaratory and injunctive relief in this court and sought a temporary restraining order that would prohibit the Army from discharging him, as scheduled, on July 7, 1980. At the conclusion of a brief hearing held on July 3, 1980, the court scheduled a further hearing for July 11, 1980 and enjoined the defendants and their agents from discharging plaintiff until after the July 11 hearing. On July 10, the government filed a memorandum and several lengthy documentary exhibits in opposition to the request for a temporary restraining order, and on July 11, plaintiff filed an amended complaint and a supplemental memorandum in support of his request. In order to give full consideration to all of these papers, the court, at the time of the July 11 hearing, did not rule on whether a temporary restraining order would be granted. Instead, after receiving the government's assurances that plaintiff would not be discharged until the court had made a decision, the court indicated that it would make its decision on July 15, 1980. In view of the fact that necessary delays have already, in effect, given plaintiff the temporary restraining order he sought, and because both sides have asked the court to treat the ruling announced in open court on July 15, 1980 as though made on an application for a preliminary injunction, the court will treat its July 15 opinion as directed to an application for a preliminary injunction. For the reasons which follow, the court will deny preliminary injunctive relief.

The decision of a district court to grant or deny interlocutory injunctive relief must be based upon a consideration of the factors contained in the balance–of–hardship test as set forth in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 196 (4th Cir. 1977). *See also Maryland Undercoating Co., Inc. v. Payne*, 603 F.2d 477, 481–82 (4th Cir. 1979); *North Carolina State Ports Authority v. Dart Containerline*

*Co., Ltd.*, 592 F.2d 749, 750 (4th Cir. 1979); *Johnson v. Bergland*, 586 F.2d 993 (4th Cir. 1978); *United States v. Commonwealth of Virginia*, 569 F.2d 1300 (4th Cir. 1978); *Fort Sumter Tours, Inc. v. Andrus*, 564 F.2d 1119 (4th Cir. 1977).

As the Fourth Circuit noted in the *Maryland Undercoating* case:

The balance–of–hardship test can be summarized as follows. The decision of the district court to grant or deny interlocutory injunctive relief should be based on a "flexible interplay" among all the factors to be considered, i. e., likelihood of irreparable harm to the plaintiff without an injunction; likelihood of harm to the defendant with an injunction; plaintiff's likelihood of success on the merits; and the public interest. The first step in determining whether interlocutory injunctive relief should issue is for the court to balance the likelihood of irreparable harm to the plaintiff without an injunction against the likelihood of harm to the defendant with an injunction. If a decided imbalance of hardship should appear in plaintiff's favor, it is enough that grave or serious questions are presented; plaintiff need not show a likelihood of success on the merits. The need for plaintiff to show likelihood of success on the merits increases as the probability of irreparable injury to plaintiff without an injunction decreases. Finally, the court should consider wherein lies the public interest, sometimes described as preserving the *status quo ante litem* until the merits of a serious controversy can be fully considered by a trial court. See *Blackwelder*, 550 F.2d at 195–97.

In the *Blackwelder Furniture* case, relied on in *Maryland Undercoating*, the Court of Appeals for the Fourth Circuit stated that of the four factors the district court should consider, the two more important ones are those dealing with the likelihood of harm to the defendant if an injunction is issued and the likelihood of harm to plaintiff if an injunction is not issued.

With respect to these two factors, the court must also consider the Supreme Court's opinion in *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) in determining whether plaintiff has made a sufficient showing that the balance of harms is weighted in his favor. In *Murray*, a probationary employee was dismissed from federal employment, allegedly without due process. In reversing the lower court's decision to grant a restraining order, the Court indicated that a plaintiff seeking to prevent his discharge from government service has a heavy burden:

The District Court, exercising its equitable powers, is bound to give serious weight to the obviously disruptive effect which the grant of the temporary relief awarded here was likely to have on the administrative process. When we couple with this consideration the historical denial of all equitable relief by the federal courts in cases such as *White v. Berry*, 171 U.S. 366, 18 S.Ct. 917, 43 L.Ed. 199 (1898), the well–established rule that the Government has traditionally been granted the widest latitude in the "dispatch of its own internal affairs," *Cafeteria Workers v. McElroy*, 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961), and the traditional unwillingness of courts of equity to enforce contracts for personal service either at the behest of the employer or of the employee, . . . we think that the Court of Appeals was quite wrong in routinely applying to this case the traditional standards governing more orthodox "stays." See *Virginia Petroleum Jobbers Assn. v. FPC*, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). Although we do not hold that Congress has wholly foreclosed the granting of preliminary injunctive relief in such cases, we do believe that respondent at the very least must make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in Government personnel cases.

415 U.S. at 83–84, 94 S.Ct. at 949–50.

The plaintiff in *Murray* alleged three types of irreparable injury: (1) deprivation of income for an indefinite period; (2) re-

tention of spurious and unrebutted charges in her record; and (3) embarrassment inherent in being wrongfully discharged in the presence of coworkers. 415 U.S. at 89, 94 S.Ct. at 952. In concluding that none of these constituted allegations of irreparable injury, the Supreme Court quoted from *Virginia Petroleum Jobbers*, 259 F.2d at 925:

> "The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."

415 U.S. at 90, 94 S.Ct. at 953. The Court held that even if the plaintiff could prove that she would lose income and that her reputation would be damaged by the challenged agency action, "the showing falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case." 415 U.S. at 91–92, 94 S.Ct. at 953. Finally, the Court held that, except in some undefined extraordinary cases, the mere fact that a discharged employee cannot quickly find other work does not amount to irreparable injury:

> We have held that an insufficiency of savings or difficulties in immediately obtaining other employment–external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself–will not support a finding of irreparable injury, however severely they may affect a particular individual.

415 U.S. at 92 n.68, 94 S.Ct. at 953 n.68.

■ In the view of this court, the *Sampson v. Murray* case is clearly relevant to several of the contentions raised by Sgt. Simmons. The allegations that his loss of employment and his only source of income and the damage to his reputation are irreparable injuries cannot be sustained in light of *Sampson v. Murray*.

Moreover, because this case involves review of internal military affairs, the policy underlying the *Sampson v. Murray* rule is, if anything, more compelling here. In *McCormick v. Claytor*, 441 F.Supp. 622, 624 (D.Or.1977), the *Sampson* rule was express-

ly applied in the context of a request to enjoin an imminent honorable discharge from the Navy. Noting the traditional reluctance of courts to intervene in military affairs, *McCormick* found no irreparable injury, notwithstanding the fact that, in addition to the injuries found insufficient in *Sampson v. Murray*, McCormick was likely to suffer a stigma in his community and an obstacle to future employment as a result of his discharge and would suffer an irretrievable loss of medical benefits. Plaintiff's claims of similar potential injuries are equally insufficient to justify preliminary injunctive relief. Although Sgt. Simmons asserts that information concerning the reason for his discharge could be released to other branches of the military, he does appear to admit that applicable privacy regulations make any further disclosure of such reason unlikely.

■ Finally, plaintiff claims that he will be irreparably harmed because, if he is discharged, he will lose his ability to seek review of his complaints before an Administrative Discharge Board, *see* 32 C.F.R. §§ 41.1 to 41.13. As will be discussed later, plaintiff has not made an adequate showing that he comes within the protection of the cited Department of Defense regulations. Thus, even if plaintiff remained in the Army, the court is unaware of any Army or Defense regulation that would permit him to obtain a hearing before a board of officers.

■ The second factor the court must consider in determining whether to grant interlocutory injunctive relief is the likelihood of harm to the defendants if a preliminary injunction were granted. The court agrees with the government that it would be an unwarranted judicial intrusion into the Army's management of its soldiers if the court granted the relief sought by plaintiff in this case.

In *Crawford v. Davis*, 249 F.Supp. 943 (E.D.Pa.), *cert. denied*, 383 U.S. 921, 86 S.Ct. 923, 15 L.Ed.2d 676 (1965), the court refused to grant a preliminary injunction to an Army sergeant who had almost 18 years

service and who sought to enjoin his general discharge for homosexuality. The court denied relief principally because of the harm which would accrue if Crawford remained in the Army.

Crawford, as plaintiff here, sought to overcome the government's argument that the Army would suffer harm by showing that his performance of duty in his present assignment was satisfactory. However, the court rejected that argument, holding:

> I must, however, take judicial notice of the inherently mobile nature of military life and the general requirement that a soldier on active duty must be eligible to accept any assignment required of him. I cannot say with certainty that the plaintiff will remain at his present duty station or that the personnel there will remain constant.... I think that it would be clearly inappropriate to hobble the Army by forcing it to retain even one soldier, for an indefinite period of time, when there are serious questions concerning his emotional health.

249 F.Supp. at 947. The court's comments are equally applicable to plaintiff here whose emotional health is substantially called into question by his alleged use of alcohol. The court also held that this substantial harm to the Army was harm to the public interest.

Furthermore, in evaluating plaintiff's allegation that he functions well in his new assignment, it should be considered that he now works as a household goods inspector. In the 414th Signal Company, to which he was assigned until March 1980, he was a troop leader, responsible for the supervision and, in emergency or combat situations, the lives of other men, as well as for technical equipment. It was in that context that he could not function and it is in that function that he is normally required to serve, by virtue of his training in that area and by virtue of his status as a senior non–commissioned officer.

Additionally, plaintiff's discharge cannot be viewed in a vacuum. The Army is a huge organization of almost a million individuals. The ongoing alcohol rehabilitation program directly affects unit morale and readiness. When the Army determines that individuals are not making adequate progress in the rehabilitation program, it is even more crucial to mission effectiveness that such personnel be expeditiously separated. A declaration submitted on behalf of defendants indicates that in 1979, 3,321 soldiers were discharged for drug and alcohol abuse of which 1,762 were separated for alcohol abuse. To grant interlocutory injunctive relief in this kind of case would impede the proper functioning of the military administrative structure and would thereby frustrate the public interest in having a military as free from unwarranted judicial interference as possible.

Thus, the court concludes that the likelihood of irreparable harm to Sgt. Simmons if a preliminary injunction were granted is substantially outweighed by the irreparable harm that would result to the Army and to the public interest if such relief were granted. Because of the court's view that the balance–of–hardships tests favors defendants in this case, plaintiff must demonstrate a stronger likelihood of success on the merits than he would if the balance of hardships tipped in his favor. In the court's view, such a showing has not been made.

One of plaintiff's principal arguments in his amended complaint and in his supplemental memorandum in support of his application for a preliminary injunction is that the Army regulation under which the government seeks to discharge him is in conflict with Department of Defense regulations. AR 635–200, ¶ 9–1, permits defendants to discharge plaintiff for his failure in the Army's alcohol rehabilitation program without the opportunity for an Administrative Discharge Board hearing. Plaintiff contends that this regulation plainly conflicts with the Defense regulations concerning administrative separation of enlisted personnel, 32 C.F.R. §§ 41.1 to 41.13, and he argues that the Defense regulations give him the right to a Board hearing. In particular, Sgt. Simmons refers to 32 C.F.R. § 41.7(g)(2), which lists as a reason for separation:

(g) *Unsuitability.* Separation with an Honorable or a General discharge, as warranted by the member's military record, when it has been determined that an individual is unsuitable for further military service because of:

. . . . .

(3) Alcohol Abuse. Failure, through inability or refusal, to participate in, cooperate in, or complete an alcohol abuse treatment and rehabilitation program.

32 C.F.R. § 41.11(d)(2) provides that a member with eight or more years of active military service may receive a § 41.7(g) unsuitability discharge only if certain procedures are followed. The procedures include the right to a hearing before an Administrative Discharge Board and the right to counsel.

■■ Plaintiff correctly points out that the regulations of the various branches of the service must be in accord with those of the Department of Defense, but the Army regulation that he challenges does not conflict with any Defense regulation to which he has referred the court. It seems very likely to this court that one of the major elements in the reasoning of the Department of Defense in its decision to provide for a hearing in situations covered by 32 C.F.R. §§ 41.7(g)(2) and 41.11(d)(2) was that the affected member is subject to a possible *general* discharge, as well as to a more desirable honorable discharge. In chapter 9 of AR 635–200, however, only an honorable discharge is possible. ¶ 9–3 specifically provides that: "Members discharged under this chapter must receive honorable discharge certificates."

Because the Army is proceeding against Sgt. Simmons under chapter 9 of AR 635–200, rather than under the chapter that directly implements the Defense regulations at issue in 32 C.F.R., Sgt. Simmons can receive only an honorable discharge. Apparently, the Army has concluded that if it eliminates the possibility of a general discharge in cases like that of Sgt. Simmons, it can, consistently with the Defense regulations, also eliminate the requirement of a hearing in such cases. The court sees no error in this logic, and in light of the impli-

cation in 32 C.F.R. § 41.13(b) that Army regulations must be approved by the Secretary of Defense, the Department of Defense apparently has found no inconsistency between its regulations and the Army's either. Thus, plaintiff has failed to demonstrate that AR 635–200 is in conflict, on its face or otherwise, with the Department of Defense regulations.

Plaintiff's other contention on the merits of his case is that he was discharged without being afforded an adequate opportunity to contest the basis for his discharge. Thus, he claims, his due process rights under the fifth amendment were violated. When advised by his unit commander that action was being initiated to discharge plaintiff, he was also advised that, pursuant to AR 635–200, he had a right to rebut the recommendation for discharge. Sgt. Simmons did file a lengthy written rebuttal that was forwarded, along with the unit commander's recommendation for discharge, to the Commander of Headquarters Command. The latter Commander directed his executive officer to inquire into plaintiff's contentions. The executive officer reported that no substantial defects existed in the discharge action and that, *inter alia*, contrary to plaintiff's assertion, the decision of the alcohol and drug abuse prevention and control program staff to declare plaintiff a rehabilitation failure was not due to pressure by the unit commander.

Plaintiff contends that he is entitled to greater procedural safeguards than were given him. Specifically, he argues that because of his property and liberty interests at stake, he has a due process right to a hearing before he can be discharged. However, defendants have referred the court to several opinions that indicate that a serviceman has no property interest or entitlement in continued military service. *E. g., Diliberti v. Brown,* 583 F.2d 950, 952 (7th Cir. 1978); *Knehans v. Alexander,* 566 F.2d 312, 314 (D.C. Cir. 1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978); *Sims v. Fox,* 505 F.2d 857, 860–62 (5th Cir. 1974), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975); *benShalom v.*

*Secretary of the Army*, 489 F.Supp. 964 at 971–72 (E.D.Wis., 1980); *Rew v. Ward*, 402 F.Supp. 331, 338–39 (D.N.M.1975). *But see Berg v. Claytor*, 436 F.Supp. 76, 81 (D.D.C. 1977), *vacated on other grounds*, 591 F.2d 849 (D.C. Cir. 1978); *Suro v. Padilla*, 441 F.Supp. 14, 17 (D.P.R.1976).

The government also contends that the alternate predicate for the right to procedural due process, a liberty interest, is not presented in this case. A liberty interest vests if there is imposed "a stigma or other disability that foreclose[s] freedom to take advantage of other employment opportunities." *Board of Regents v. Roth*, 408 U.S. 564, 574, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Courts have held that a liberty interest is not impinged by the mere fact of discharge from military service unless stigmatizing information is likely to be disseminated to the public at large or to prospective employers. *E. g., Knehans v. Alexander*, 566 F.2d at 314; *Sims v. Fox*, 505 F.2d at 862–63; *benShalom v. Secretary of the Army*, 489 F.Supp. at 971–72. *See generally Diliberti v. Brown*, 583 F.2d at 952. "The mere presence of derogatory information in *confidential* files is not an infringement of 'liberty.'" *Sims v. Fox*, 505 F.2d at 863.

■ Even if plaintiff were able to establish that he has a property or liberty interest in this matter, and thus that he has due process rights at stake, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In the court's view, Sgt. Simmons has not demonstrated that the procedures outlined in chapter 9 of AR 635–200, which have been followed in his case, are inadequate or fail to comport with due process in his case. In *Rew v. Ward*, 402 F.Supp. 331 (D.N.M.1975), the court *did* find that a discharged airman had a protected liberty interest. However, the court also found that procedures for discharge very similar to those applied by the Army in the case of Sgt. Simmons were sufficient to protect that interest. 402 F.Supp. at 340–44.

The defendants contend that plaintiff's motion for a preliminary injunction should

also be denied for failure to exhaust his available administrative remedies. The government points out that plaintiff has not presented his claims to the Army Board for Correction of Military Records (ABCMR), which is empowered under 10 U.S.C. § 1552(a) to correct errors in military records and remove injustices. A declaration filed by the Executive Secretary of the ABCMR indicates that the Board, in his view, has the power to grant complete relief in this case. He states that past ABCMR cases have resulted in reinstatement of personnel, awarding of back pay, and other forms of relief.

Plaintiff, on the other hand, argues that he should not be required to present his claim to the ABCMR because (1) it lacks expertise in adjudicating the constitutional and regulatory claims made by plaintiff, and (2) it is unrealistic to anticipate that the Board would find that AR 635–200 contravenes Defense regulations or the requirements of due process.

■ In *Sanders v. McCrady*, 537 F.2d 1199 (4th Cir. 1976), the court was presented with a case in which a former member of the National Guard alleged that he had been discharged in violation of his due process rights. The Fourth Circuit Court of Appeals held that the district court had correctly dismissed the complaint because plaintiff had not first applied to the ABCMR. Although it is also true that the plaintiff in *Sanders* had failed to take advantage of an in–service remedy, that failure appears to have played no part in the Fourth Circuit's decision to require exhaustion before the ABCMR. Thus, *Sanders* is clearly relevant to the present case and indicates that Sgt. Simmons is required to present his due process claim to the ABCMR before he presents it to a court. This court can find no reason why he should not also be required to present his regulatory claim to the ABCMR first. With respect to plaintiff's claim that one cannot reasonably expect that the Board will disapprove of regulations promulgated by the Secretary of the Army on either ground raised by plaintiff, the court can only note

that if he is able to convince the Board that his position is correct, the Secretary may not overrule the Board's decision arbitrarily:

> [I]f he rejects the Board's recommendations, he must provide either explicitly stated policy reasons, or his action must be supported by the record and evidence presented to the Board.

*Hodges v. Callaway*, 499 F.2d 417, 423 (5th Cir. 1974).

In conclusion, the court, in applying the standards of *Blackwelder* and its progeny, finds that the balance of hardships in this case weighs in favor of the defendants. While the court does not intend to imply that plaintiff will suffer no hardship if he is discharged, the court does hold that the hardship is not of such a severe or irreparable nature as to outweigh the interest of the government in operating the Army without undue judicial interference. *See Gilligan v. Morgan*, 413 U.S. 1, 8, 10–11, 93 S.Ct. 2440, 2444, 2445–46, 37 L.Ed.2d 407 (1973); *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953). As is apparent from the court's discussion, there is considerable doubt that plaintiff will ultimately prevail on the merits in this case. His contention that a conflict exists between Army and Department of Defense regulations has not been demonstrated and his claim of a denial of due process appears of almost equally dubious merit. Finally, plaintiff has not shown that he should be exempt from the exhaustion of administrative remedies requirement as set forth in the *Sanders* case.

For all of the foregoing reasons, the motion for a preliminary injunction will be denied.