Lester F. CASEY

v.

The UNITED STATES.

No. 528–80C.

United States Claims Court.

May 13, 1985.

Alan R. Thiele, Lake Forest, Illinois, for plaintiff.

Colvin W. Grannum, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

YOCK, Judge.

This action arises from the involuntary release of the plaintiff, Lester F. Casey, from active duty with the United States Army on November 8, 1976. The plaintiff seeks: (1) correction of his official military service records, (2) active duty pay and allowances from November 8, 1976, until September 12, 1979, and (3) placement on the military retirement rolls with retirement benefits from September 12, 1979. The parties have filed cross-motions for summary judgment. For the reasons discussed below, the plaintiff's motion for summary judgment is granted and the defendant's cross-motion for summary judgment is denied.

### Facts

The plaintiff enlisted in the United States Army on August 4, 1959, in the pay grade of E–1. Thereafter, he reenlisted on February 2, 1962, February 2, 1968, and September 13, 1973, with each reenlistment being for a term of six years. He was promoted in the normal course of service and reached the rank of sergeant first class, pay grade E–7, in February 1970. The plaintiff was involuntarily released with an Honorable Discharge from the Army on November 8, 1976, prior to the expiration of his September 13, 1973, reenlistment. At the time of his discharge, the plaintiff was serving in Korea and had served on active duty for approximately 17 years.[1]

After the plaintiff's involvement in several incidents of misconduct involving alcohol

---

1. If the plaintiff had successfully completed his latest reenlistment, he would have been eligible for voluntary retirement on September 12, 1979.

abuse, the plaintiff's commander, Capt. David E. Guthrie, Jr., referred the plaintiff to the military drug and alcohol rehabilitation center, Freedom House, on December 4, 1975. During the ensuing evaluation by personnel of Freedom House, the plaintiff was diagnosed as suffering from "alcoholism-episodic excessive drinking" and was enrolled in a four-week individual counseling program. He completed this program on January 12, 1976, and subsequently enrolled in an eight-week group therapy program.

During the period June 17, 1976, to August 10, 1976, the plaintiff was involved in several other incidents evidencing his continued alcohol abuse. Further, the plaintiff's Enlisted Evaluation Report (EER), covering the period April 1976 to August 1976, stated that Sergeant Casey's overall duty performance had steadily deteriorated. These circumstances prompted Captain Guthrie, on August 13, 1976, to refer the plaintiff again to Freedom House for diagnosis. Additionally, a "Report of Psychiatric Evaluation," signed by Dr. Michael A. Levy on August 16, 1976, indicated that the plaintiff had started using alcohol at an early age and currently was consuming considerable amounts, although no emotional disorder was present.

As a result, by letter dated September 28, 1976, Captain Guthrie notified the plaintiff that he intended to recommend him for early discharge under the provisions of Chapter 16, Army Regulation ("AR") 635–200, ¶ 16–1 (1976). The basis for the discharge was that the plaintiff was unable to rehabilitate himself from the abuse of alcoholic beverages. The letter also advised the plaintiff of his right to submit a statement on his behalf and of his right to consult with an officer of the Judge Advocate General's Corps. On the same date, Captain Guthrie contacted the separation authority, Col. Richard W. Wilmot, Commander, 502d Military Intelligence Battalion, proposing the plaintiff's discharge prior to the termination of his reenlistment term.

After receiving this notice, the plaintiff requested legal representation and an opportunity for a hearing before a board of officers. Captain Guthrie responded on October 1, 1976, informing the plaintiff, *inter alia*, that a Chapter 16 discharge action did not provide him with a right to a hearing before a board of officers.

Thereafter, the plaintiff consulted with counsel and, on October 12, 1976, submitted a detailed response, including lengthy affidavits, to the September 28, 1976, notice of proposed discharge. After reviewing the plaintiff's response and consulting with a rehabilitation staff member, as required by AR 600–85, ¶ 5–8 (1976), Colonel Wilmot directed that the plaintiff be honorably discharged from the Army prior to the expiration of his term of military service. The basis for the plaintiff's discharge was Colonel Wilmot's determination that the plaintiff was an alcohol rehabilitative failure as defined in Chapter 16, AR 635–200, ¶ 16–1(b) (1976).

On October 6, 1976, the plaintiff wrote the Secretary of the Army requesting that he not be discharged for 90 days in order to permit a congressional investigation into the proposed discharge action. Subsequently, on November 8, 1976, the Army Military Personnel Center, Washington, D.C., directed that the plaintiff be retained on active duty until February 1977. However, before such message reached the plaintiff's unit in Korea, the plaintiff had been transferred to the U.S. Army Transfer Point, Oakland, California, and discharged as a sergeant, in the pay grade of E–5, on November 8, 1976.

Prior to his discharge on November 8, 1976, the plaintiff was awarded nonjudicial punishment and demoted from pay grade E–7 to pay grade E–5 as a result of several alcohol related violations of the Uniform Code of Military Justice. However, ten days after his discharge, on November 18, 1976, the plaintiff's reductions from pay grade E–7 to pay grade E–6 (August 4, 1976) and from pay grade E–6 to pay grade E–5 (August 18, 1976) were reversed by the plaintiff's military reviewing authority and

all rights and privileges taken by virtue thereof were restored. Accordingly, on August 23, 1977, the plaintiff was issued a corrected discharge certificate reflecting his honorable discharge in the pay grade of E–7.

On July 15, 1980, the plaintiff applied to the Army Board for the Correction of Military Records (ABCMR) for correction of his military service records. His application sought relief based upon five primary grounds: (1) the plaintiff was denied a hearing before a board of officers in violation of the applicable regulations; (2) the procedure used to discharge the plaintiff denied him minimum due process; (3) the plaintiff was discharged in violation of a Department of the Army message extending his discharge date until February 1977; (4) the plaintiff was not transferred to a Veterans Administration ("VA") facility for long-term rehabilitation treatment in violation of the applicable regulations; and (5) the plaintiff should not have been discharged, since he was not a rehabilitative failure.

Approximately two months later, the plaintiff filed a petition in this Court, on September 26, 1980, seeking the same relief that he was demanding from the ABCMR. Upon motion by the defendant, the petition in this Court was suspended pending the ABCMR's decision.

On March 17, 1982, the ABCMR denied the plaintiff's application for correction of his service records, based upon its examination of all of the evidence presented by the plaintiff, the plaintiff's service records, several staff advisory opinions, and the applicable statutory and regulatory provisions. The ABCMR concluded that: (1) the plaintiff's application was not timely filed; (2) the plaintiff was separated in accordance with the appropriate regulations in effect at the time; (3) the plaintiff had failed to establish that his discharge had been extended to February 1977; (4) the plaintiff was not eligible for transfer to a VA medi-

cal rehabilitation facility; and (5) the evidence established that the plaintiff was a rehabilitative failure. By letter dated May 24, 1982, the plaintiff was notified that the ABCMR had denied his application without a hearing, since it had determined that insufficient relevant evidence had been presented to demonstrate the existence of probable material error or injustice.

Thereafter, the defendant moved to vacate the suspension of his case in this Court and, later, the plaintiff filed the instant motion for summary judgment. The plaintiff specifically seeks the correction of his service records to reflect that he served on active duty until September 12, 1979, and then voluntarily retired as a sergeant first class, in the pay grade of E–7, with over twenty years of military service. The petition also requests active duty pay, allowances, and medical benefits for pay grade E–7, from November 8, 1976, until September 12, 1979, and retirement pay from September 12, 1979.

In his motion for summary judgment, the plaintiff alleges, *inter alia*,[2] that he was denied due process when he was administratively discharged prior to the termination of his reenlistment term, without being afforded an administrative discharge hearing as required by Department of Defense (DOD) regulations. In addition, he asserts that the honorable discharge he received carried a stigma which itself dictated that the plaintiff be given due a due process hearing prior to discharge.

The defendant has also moved for summary judgment and argues that the plaintiff's claims, however meritorious, are barred by the equitable doctrine of laches and that, in any event, the plaintiff is not entitled to relief on any of the grounds he has advanced.

### Discussion
#### A. Laches

The doctrine of laches requires that the defendant prove that the plaintiff

---

2. The other allegations the plaintiff raises are immaterial in view of this Court's decision herein.

unreasonably and inexcusably delayed in asserting his claim and that the defendant has suffered prejudice resulting therefrom. *Bunge Corp. v. United States,* 5 Cl.Ct. 511, 521 (1984). Here the plaintiff's cause of action accrued on November 8, 1976, upon his discharge from active duty. *Alberico v. United States,* 7 Cl.Ct. 165, 168 (1984). His application to the ABCMR for correction of his military service records was filed on July 15, 1980, and his petition (now complaint) was filed in the U.S. Court of Claims on September 26, 1980, some three years and ten months from his date of discharge.

While delays significantly shorter than three years and ten months have been found sufficient to support a laches defense, "delay alone does not constitute laches." *Brundage v. United States,* 205 Ct.Cl. 502, 509, 504 F.2d 1382, 1386, *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1974). *See also Bunge Corp. v. United States, supra,* 5 Cl.Ct. 511 (three years); *Fleming v. United States,* 2 Cl.Ct. 111 (1983) (eleven months). To prevail on a laches defense, the Government must establish that it has been prejudiced by the plaintiff's delay. This the defendant has failed to do. While the defendant has generally argued that the Government will have to pay for services not rendered and that Government witnesses' memories have faded, it has failed to demonstrate sufficient prejudice. Further, the Court finds compelling the plaintiff's argument (supported by affidavit) that he was laboring under a double burden of indigency and the difficulty of obtaining counsel overseas in Korea, where he was living, after being discharged, with his Korean wife and family. *See Powell v. Zuchert,* 366 F.2d 634, 637–38 (D.C.Cir.1966); *Gava v. United States,* 225 Ct.Cl. 676, 679 n. 2 (1980). The Court therefore must reject the defendant's laches argument and turns to the merits of the plaintiff's contentions.

## B. Conflicting Regulations

The plaintiff alleges that he was denied the due process rights afforded him by DOD regulations when he was adminis-

tratively discharged, prior to the termination of his enlistment, without first being given an administrative discharge hearing. Specifically, he claims that the Army regulations under which he was discharged, which did not provide for an administrative discharge hearing, were inconsistent and in direct conflict with the DOD regulations requiring such hearing. Therefore, the plaintiff asserts that the Army's failure to give him a hearing prior to his discharge was contrary to the DOD regulations and that, as such, his discharge was invalid as a matter of law.

The defendant counters this argument by denying that the DOD regulations and the Army regulation are inconsistent and cites this Court to a district court opinion which so held. *Simmons v. Brown,* 497 F.Supp. 173, 178 (D.Md.1980). The defendant concedes that the DOD regulations granted a hearing to those servicemen, with over eight years of service, who failed to rehabilitate themselves from alcohol abuse, when they were facing an administrative discharge for unsuitability in which they could be given either a general or an honorable discharge. However, since the plaintiff in this case was given an administrative discharge under an Army regulation that only authorized an honorable discharge to servicemen who failed to rehabilitate themselves from alcohol abuse, the Government argues that due process considerations did not require that the plaintiff be given a hearing and that the regulations at issue were not in conflict.

The issue, then, comes down to the question of whether these two otherwise very similar regulations are inconsistent and in conflict. This Court finds that they are. The plaintiff was entitled to a hearing as provided for in the DOD regulations.

Clearly, since the Army is bound by its own regulations, if it discharges a serviceman in violation of its own regulations, such discharge will be invalidated. *See Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Conn v. United States,* 180 Ct.Cl. 120, 376 F.2d 878 (1967); *Cole v. United States,* 171 Ct.Cl.

178 (1965); *Middleton v. United States,* 170 Ct.Cl. 36 (1965); *Sofranoff v. United States,* 165 Ct.Cl. 470 (1964); *Watson v. United States,* 142 Ct.Cl. 749, 162 F.Supp. 755 (1958). In *Birt v. United States,* 180 Ct.Cl. 910 (1967), the Court of Claims repeated the general rule that an administrative discharge is void if it ignores procedural rights or regulations, exceeds applicable statutory authority, or violates minimum concepts of basic fairness. On the other hand, the Court of Claims has repeatedly stated that a serviceman does not have a right to remain in the service until the end of his enlistment (*McAulay v. United States,* 158 Ct.Cl. 359, 305 F.2d 836 (1962), *cert. denied,* 373 U.S. 938, 83 S.Ct. 1543, 10 L.Ed.2d 693 (1963)), and that his removal may be accomplished administratively (*Rowe v. United States,* 167 Ct.Cl. 468 (1964), *cert. denied,* 380 U.S. 961, 85 S.Ct. 1103, 14 L.Ed.2d 152 (1965)), but, in any case, the discharge is subject to this Court's scrutiny.

The statutory authority for discharge of enlisted personnel by the Secretary of the Army, prior to the end of their enlistment term, is found in 10 U.S.C. § 1169 (1976), which provides:

No regular enlisted member of an armed force may be discharged before his term of service expires, except—

(1) as prescribed by the Secretary concerned;

(2) by sentence of a general or special court martial; or

(3) as otherwise provided by law.

It is clear, however, that regulations that are promulgated by the Army must be in accord with those promulgated by the Department of Defense. *Simmons v. Brown, supra,* 497 F.Supp. at 178. To the extent that Army regulations conflict with those of the Department of Defense, the service regulations must give way.

The DOD regulations at issue herein are found in 32 C.F.R. Part 41 (1976), and are entitled Enlisted Administrative Separa-

tions. The purpose of these regulations is stated as follows:

This part updates the policies, standards, and procedures which govern the administrative separation of enlisted persons from the Armed Forces.

32 C.F.R. § 41.1 (1976). Also, section 41.2 provides that:

The provisions of this part apply to the Regular and Reserve components of the Army, Navy, Air Force, Marine Corps and, by agreement with the Secretary of Transportation, to the Coast Guard.

32 C.F.R. § 41.2 (1976). Further, and more specifically, 32 C.F.R. § 41.7(g) (1976) sets out the authorized reasons for separation of servicemen from the armed forces, which include in pertinent part:

Unsuitability. Separation with an Honorable or a General discharge, as warranted by the member's military record, when it has been determined that an individual is unsuitable for further military service because of:

\*       \*       \*       \*       \*       \*

(2) Alcohol abuse. Failure, through inability or refusal, to participate in, cooperate in, or complete an alcohol abuse treatment and rehabilitation program.

Moreover, 32 C.F.R. § 41.11(d)(2) (1976) provides that a servicemember with eight or more years of active military service may receive a section 41.7(g) unsuitability discharge only if certain procedures are followed, including the right to a hearing before an administrative discharge board composed of three commissioned officers and the right to counsel. 32 C.F.R. § 41.11(e)(1) (1976).

As indicated earlier, Chapter 16, AR 635-200 (1976), provides for the honorable discharge of servicemembers who have been determined by their command to be drug or alcohol rehabilitative failures,[3] regardless of the number of years of active duty they have served. The regulation accords the servicemember only the right to be notified

---

**3.** The DOD regulation at issue, 32 C.F.R. § 41.7(f) (1976), specifically separated drug abuse rehabilitative failures from alcohol rehabilitative failures and provided entirely different administrative discharge routes and due process rights for both.

of the impending discharge, the right to consult with counsel, 48 hours to acknowledge receipt of the notice of discharge and to present any statements in defense, and the right to be notified of the Command's final decision. There is no right accorded the serviceman to a hearing.[4]

After careful consideration of both AR 635–200 (1976) and 32 C.F.R. §§ 41.7(g)(2), 41.11(d)(2) (1976), this Court finds that the Army regulations are inconsistent with the DOD regulations to the extent that the Army regulations did not provide the servicemember with an opportunity for an administrative discharge board hearing prior to his discharge for alcohol abuse and, as such, his discharge was invalid as a matter of law. The DOD regulations *required* that the plaintiff be given a hearing before an administrative discharge board, since he had served over eight years on active military duty prior to his being discharged for alcohol abuse. Since the DOD regulations control over the Army regulations, the Army regulations could not take away essential due process rights granted the plaintiff by the DOD regulations. The plaintiff was discharged for alcohol abuse, as contemplated by 32 C.F.R. § 41.7(g)(2) (1976), and, accordingly, was entitled to a hearing *prior* to his discharge.

As the plaintiff correctly points out, a right to a hearing before an impartial administrative discharge board of officers is not an inconsiderable right. It is a substantial right that the plaintiff had every reason to expect. An administrative discharge board is composed of at least three experienced commissioned officers at least one of whom shall be serving in the grade of major or higher. 32 C.F.R. § 41.5(a) (1976). The board hears evidence, considers the matter, and finally recommends retention or discharge. If discharge is recommended, the board also recommends the

type of discharge. In addition, the board's recommendations limit the discretion of the discharge authority. In view of the hotly contested factual question as to whether the plaintiff was an alcohol rehabilitative failure, a board should have considered the matter and issued its recommendations. The failure of the Army to grant the plaintiff a board hearing amounted to arbitrary and capricious action, which was simply compounded by the ABCMR decision.

The Government in this case has relied heavily on *Simmons v. Brown*, 497 F.Supp. 173, 178 (D.Md.1980). In *Simmons*, the district court held that AR 635–200 (1978)[5] did not conflict with 32 C.F.R. §§ 41.7(g), 41.11(d)(2) (1976). The district court reasoned that, since the DOD regulations subjected the servicemember to a possible general discharge (as well as to a more desirable honorable discharge) and the Army regulations *only* subjected the servicemember to an honorable discharge, the plaintiff had no right to complain, since he could only receive the highest type of discharge that the Army could award. An administrative discharge board hearing was unnecessary under these circumstances.

Unfortunately, however, this Court must respectfully disagree with the district court's reasoning. Here, the plaintiff had served more than seventeen years on active duty. Whether he received an honorable discharge or a general discharge under honorable conditions was a distinction to him without merit as it would be to anyone in his circumstances. He wanted a chance to speak up for his career. He wanted a chance to show that he was not an alcohol rehabilitative failure and to show that he could honorably serve out the remainder of his enlistment. Under the DOD regulations, he had a right to do that—a right that the Army could not foreclose. In addition, an honorable discharge may not al-

**4.** It is interesting to note that the Army regulation at issue herein has been changed to conform to the DOD regulation in that the current Army regulation now provides for a hearing for those servicemen with six years or more of military service. *See* Chapter 9, AR 635–200 (1985).

**5.** AR 635–200 (1978) superceded AR 635–200 (1976), the Army regulation at issue herein. The regulations, however, are substantially identical.

ways be the highest type of discharge that can be awarded, especially if it is accompanied by stigmatizing information contained on the honorable discharge document as will be discussed in section C hereinafter.

The DOD regulations expressly recognize that servicemembers, after contributing eight or more years of active military service, are *entitled* to the rudimentary due process requirements of notice and a hearing. In the instant case, the plaintiff served in the Army for some seventeen years, including two tours of military service in Vietnam, during which he was highly decorated. As such, the DOD regulations *required* that the plaintiff be afforded notice and a hearing prior to being discharged. After some seventeen years of military service to this country, the plaintiff was entitled to an opportunity to be heard before being involuntarily discharged from the Army prior to the expiration of his enlistment term.

Accordingly, the plaintiff was improperly discharged from the Army prior to his being afforded the opportunity to appear before an administrative discharge hearing board and, thus, his discharge was void as a matter of law.

### C. Stigma Discharge

In the plaintiff's second major argument, he asserts that, even if the DOD and Army regulations are not in conflict, he is still entitled to a hearing, since the discharge certificate he received included stigmatizing or derogatory information on its face. Specifically, the plaintiff points to his DD 214 discharge certificate in which the character of his service is listed as "Honorable," but the authority and reason for discharge includes the coded designation "JPB," which stands for personal abuse of alcohol and other drugs. The plaintiff claims that, because the code stigmatizes his service and discharge in the eyes of society, elementary considerations of constitutional and administrative due process required that he be given a hearing, even though the Army regulations under which he was discharged did not provide for such a hearing.

The defendant states in its opposition that the plaintiff received the highest discharge available to a serviceman and, thus, due process considerations do not require a hearing. Further, the defendant asserts that a coded designation on the face of the discharge certificate cannot be stigmatizing, since the code is essentially private information known only within the Department of Defense and not understood by the general public.

For the following reasons, this Court agrees with the plaintiff that his discharge included stigmatizing information and that elementary considerations of due process required a hearing prior to the plaintiff's discharge.

A "stigma" may attach to a servicemember's discharge either from the characterization of the discharge or from the reasons recorded for the discharge, if such reasons present a "derogatory connotation to the public at large." *Birt v. United States, supra,* 180 Ct.Cl. at 914. This Court's predecessor, the U.S. Court of Claims, previously held, in *Keef v. United States,* 185 Ct.Cl. 454 (1968), that:

> As a general rule, if the regulation pursuant to which a serviceman is honorably discharged does not, by its own terms, require notice and a hearing, they are required only if the discharge, albeit honorable, either casts a stigma on the serviceman or has some derogatory connotation.

> \* \* \* \* \* \*

Our primary concern in these cases is to prevent the Armed Forces from imposing a penalty on a discharged serviceman without affording him some basic constitutional protection, the essence of which is notice and a hearing. As we said in *Clackum v. United States,* 148 Ct.Cl. 404, 296 F.2d 226 (1960), we will not permit the imposition of a stigma "without respect for even the most elementary notions of due process of law, \* \* \*." (148 Ct.Cl. at 408, 296 F.2d at 228). In *Birt v. United States, supra,* we said: "So long as an administrative discharge

is not used as a summary guise for punitive action, * * * the military remains within legally proper bounds when it chooses to grant an honorable discharge for the Government's convenience * *." (180 Ct.Cl. at 913–14).

*Keef v. United States, supra,* 185 Ct.Cl. at 467–68.

In *Keef,* the defendant wanted to administratively discharge the plaintiff because of alleged homosexual conduct. Sergeant Keef was given a hearing by an administrative discharge board of officers which, after listening to all of the evidence, recommended that he not be discharged even though he had admitted past homosexual conduct. Keef's command, however, did not concur in this result and eventually decided to administratively discharge him, for the convenience of the Government, without a hearing, using authority contained in an Air Force regulation. The code used on Keef's DD-214 discharge certificate was listed as (SDN) 21–L, which meant "Separation—By USAF directive—Individual release—Based on unique and unusual circumstances *not covered elsewhere in regulations." Keef v. United States, supra,* 185 Ct.Cl. at 468. Keef alleged that this code stigmatized him in the eyes of the general public and demanded a due process hearing. The Court, however, found otherwise, holding that:

> SDN 21–L, the reason for discharge, is defined in Attachment 1 to AFR 39–14A as: "Separation—By USAF directive—Individual release—Based on unique and unusual circumstances *not covered elsewhere in regulations."* It is one of four designations in Attachment A which may be cited as the reason for a discharge under the authority of paragraph 2. The alternatives are: conscientious objector, mass release and early release program. It is evident that the only reference which could have been cited in this case is SDN 21–L. In our opinion it is a nondescript "catch-all" reason for sepa-

ration. Plaintiff has not shown why this stigmatizes him or permits derogatory connotations, and we find that it does not.

*Keef v. United States, supra,* 185 Ct.Cl. at 468–69.

Here, unlike in *Keef,* the coded reason for the plaintiff's discharge (JPB)—drug and alcohol abuse—cannot be considered to be a nondescript catch-all reason for separation. In today's society, the stigma of being branded a drug and alcohol abuser clearly has a derogatory connotation. It is also very logical to assume from reading *Keef* that the Court of Claims would not have allowed the plaintiff to have been discharged without a hearing if the coded designation on his discharge certificate had read "homosexual."

In addition, the coded designation that the plaintiff received in this case clearly meant "personal abuse of alcohol and *other drugs."* (Emphasis added.) This was confirmed by an Army letter to the plaintiff on August 23, 1977, contained in the record.[6] No where in the record presented to this Court are there any allegations, much less confirmed facts, that the plaintiff abused drugs. The plaintiff's alleged problems stemmed from the use of alcohol. Accordingly, for the Army to brand the plaintiff a drug abuser on his DD 214 discharge certificate is one more reason why this Court finds that the Army acted in an arbitrary and capricious manner in discharging him as it did.

Finally, a word should be said regarding the defendant's argument that coded designators on DD–214's are not stigmatizing, since the codes are private information known only within the Department of Defense and are not known or understood by the general public at large. While this may generally be true, the critical problem with this defense is that the important segments of society, *i.e.,* prospective employers, do know and understand the importance of separation codes. Hence, a stigma

---

**6.** It is interesting to note that the coded reason for the plaintiff's discharge was originally defined by the Army, in a letter to the plaintiff dated November 8, 1976, as meaning "personal drug abuse."

results. This is especially true of large potential employers. The Federal Government, state and local governments, and large corporate employers routinely ask discharged servicemen for their DD-214's, and, if they do not receive satisfactory answers from the serviceman, one assumes that they routinely ask the Department of Defense what those codes mean. Even if the codes are "for official use only," one has the distinct impression that the codes are widely disseminated. In any event, in view of the huge number of people in this country that have at one time or another in their life been associated with the armed forces of this country, this Court cannot give credence to the defendant's argument. The truth of the matter is that military separation codes are known, understood and available to the part of society that count—*i.e.*, prospective employers. Thus, discharges that include stigmatizing and derogatory information must only be given to servicemen who have been afforded elementary due process rights. Accordingly, the plaintiff's discharge for drug and alcohol abuse casts a stigma on the plaintiff that required the plaintiff to have been given a hearing prior to his discharge.

The ABCMR's refusal to correct the plaintiff's records in this case was arbitrary, capricious, and contrary to law.

## CONCLUSION

For the reasons discussed above, the plaintiff's motion for summary judgment is granted, and the defendant's motion for summary judgment is denied.

■ The plaintiff is entitled to have his records corrected to show that he constructively served on active duty in the Army from the date of his improper discharge (November 8, 1976) to the expiration date of his then current reenlistment (September 12, 1979), and is entitled to all back pay, allowances, and benefits for that period of constructive active duty service. Further, the plaintiff is entitled to have his records corrected to reflect his honorable discharge on September 12, 1979, and his voluntary retirement in the pay grade of E-7, after 20 years of active duty service, with the appropriate back retirement benefits due from September 12, 1979 through the date of judgment. The Secretary of the Army is hereby directed to accomplish the above corrections in the plaintiff's records. Plaintiff is entitled to retirement benefits thereafter in accordance with the law.

The parties are directed to file a stipulation as to the amount of recovery, in accordance with the above, within 60 days from the date of this opinion. Absent the parties' agreement, further proceedings will be scheduled to determine the amount due and owing to the plaintiff.