Olive S. McEACHERN, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,
Respondent.

Appeal No. 84–1473.

United States Court of Appeals,
Federal Circuit.

Nov. 15, 1985.

Olive S. McEachern, submitted pro se.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, R. Anthony McCann and Charles R. Gross, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted for respondent.

Joseph A. Morris, Gen. Counsel, Thomas F. Moyer, Asst. Gen. Counsel and Murray M. Meeker, Office of Personnel Management, Washington, D.C., of counsel.

Before KASHIWA, Circuit Judge, SKELTON, Senior Circuit Judge, and BISSELL, Circuit Judge.

SKELTON, Senior Circuit Judge.

Ms. Olive S. McEachern (petitioner or McEachern) was employed by the United States Postal Service (postal service) as a Postage Due Technician at San Mateo, California. She resigned from this position on December 8, 1980, and at the time of her resignation was 59 years old, and had worked for the postal service for approximately 15 years.

On January 7, 1981, McEachern filed an application for disability retirement with the Office of Personnel Management (OPM), claiming that her physical condition was such that she could not perform her duties as a Postage Due Technician. She alleged that her disability was due to difficulties with her vision. Specifically, she says that her vision had deteriorated due to an accumulation of "floaters" (inner eye debris) in her right eye, and poor near vision of long standing in her left eye. She was also afflicted with a form of esotropia (a cross-eyed condition). She alleged that as she worked the "opacities" in her vision were obscuring letters and numbers and, consequently, she was suffering from an acute temporary loss of vision which prevented her from performing useful or efficient service in her position. She submitted documentary medical evidence to the OPM, including reports of Dr. Kennedy and Dr. Allen, describing her condition. Her application was filed under 5 U.S.C. § 8337 and 5 U.S.C. § 8331, which provided as follows:

§ 8337. Disability retirement

(a) An employee who completes 5 years of civilian service and is found by the Office of Personnel Management to have become disabled shall be retired on his own application or on application by his agency. A Member who completes 5 years of Member service and is found by the Office to have become disabled shall be retired on his own application. An annuity authorized by this section is computed under section 8339 of this title.

§ 8331. Definitions

For the purpose of this subchapter—

(6) "disabled" and "disability" means totally disabled or total disability, respectively, for useful and efficient service in the grade or class of position last occupied by the employee or Member because of disease or injury not due to vicious habits, intemperance, or willful misconduct on his part within 5 years before becoming so disabled;

The OPM made the following findings and determinations on the questions of disability and dependency of the petitioner based on the evidence submitted by her:

1. We have no evidence at this time to indicate a service deficiency.

2. The report from Dr. Elgin Kennedy, M.D. (December 8, 1980) indicates that your problem was related to difficulties with your supervisor. His note also stated that there was a verbal altercation at work on Thursday or Friday and you wanted to quit the post office. There is no evidence on that visit to support the contention that floaters or anything else was a serious problem. In fact, Dr. Kennedy states that he advised you to take sick leave as it was unlikely you would qualify as totally disabled on emotional grounds.

3. Nothing in his [Dr. Allen's] report indicates a disabling condition which would warrant removal from your job.

4. As a result of our review of your file, we have again concluded that documentation presented does not support your contention that you are disabled for useful and efficient service. The original decision to disallow your application is therefore sustained.

These findings and determinations were made by OPM pursuant to its authority under 5 U.S.C. § 8347 which provides in pertinent part:

§ 8347. Administration; regulations

(c) *The Office [OPM] shall determine questions of disability and dependency arising under this subchapter. Except to the extent provided under subsection (d) of this section, the decisions of the Office concerning these matters are final and conclusive and are not subject to review.* The Office may direct at any time such medical or other examinations as it considers necessary to determine the facts concerning disability or dependency of an individual receiving or applying for annuity under this subchapter. The Office may suspend or deny annuity for failure to submit to examination.

(d)(1) Subject to paragraph (2) of this subsection, an administrative action or order affecting the rights or interests of an individual or of the United States under this subchapter may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board.

(2) In case of any individual found by the Office to be disabled in whole or in part on the basis of the individual's mental condition, and that finding was made pursuant to an application by an agency for purposes of disability retirement under section 8337(a) of this title, the procedures under section 7701 of this title shall apply and the decision of the Board shall be subject to judicial review under section 7703 of this title.

(Emphasis Supplied)

The findings and determinations of the OPM were made in accordance with the definition of disability set forth in 5 U.S.C. § 8331(6) quoted above.

Based on its findings and determinations, the OPM disallowed petitioner's application. The petitioner appealed her case to the Merit Systems Protection Board (MSPB or Board) under the provisions of 5 U.S.C. § 8347(c) and (d)(1).

After a hearing, the Board made findings of fact that petitioner did have esotropia and nonbinocular vision, but that these were not disabling conditions. It also found that she had floaters or stripes in her right eye, but that there was no evidence showing that her eyesight was so disabling that she was prevented from performing useful and efficient service in her position. The Board concluded that petitioner had not established by a preponderance of the evidence that she had a disease or injury which prevented her from performing useful and efficient duties of a Postage Due Technician, which was the last position she occupied. Based on the above findings and conclusions, the presiding official of the MSPB affirmed OPM's decision disallowing petitioner's application on May 25, 1983, which was approved by the full Board by a final order dated May 8, 1984, (MSPB No. SF831L8210752). The petitioner has appealed from the MSPB order to this court.

■ At the outset we are confronted with the provision in 5 U.S.C. § 8347(c) which states that the decisions of OPM on questions of disability and dependency are final and not subject to review, except as provided in § 8347(d)(1), which allows an administrative action or order affecting the

rights or interests of an individual to be appealed to the MSPB. This raises the question of whether such disability and dependency decisions may be judicially reviewed by the court on appeal. This question was considered and answered by the Court of Claims in *Scroggins v. United States,* 397 F.2d 295 (Ct.Cl.), *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968), which held that disability retirement decisions could be reviewed by the court for legal and procedural errors. This holding became known as the *Scroggins* rule. The Supreme Court recently reiterated and approved the *Scroggins* standard in its decision in *Lindahl v. Office of Personnel Management,* 470 U.S. ——, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), where it held:

> Accordingly, while the factual underpinnings of § 8347 disability determinations may not be judicially reviewed, such review is available to determine whether "there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.'" *Scroggins v. United States,* 184 Ct.Cl. at 534, 397 F.2d, at 297.

—— U.S. at ——, 105 S.Ct. at 1633, 84 L.Ed.2d at 692.

The court also held in *Lindahl* that "the *Scroggins* standard allows only for review

of legal and procedural errors." —— U.S. at ——, 105 S.Ct. at 1628, 84 L.Ed.2d at 686. The court held further that MSPB decisions concerning retirement disability claims are reviewable by this court pursuant to the jurisdictional grants in 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9). *See Lee v. Office of Personnel Management,* 762 F.2d 987 (Fed.Cir.1985), and *Smith v. Office of Personnel Management,* 760 F.2d 244 (Fed.Cir.1985).

We now proceed to determine whether the Board committed any legal or procedural errors in considering and deciding petitioner's application, which are issues within our jurisdiction. The petitioner contends that the Board applied the wrong law in deciding her case. In this regard, she argues that the Board erred in applying the onerous definition of disability contained in 5 U.S.C. § 8331(6), quoted above, which requires an applicant for disability to be "totally disabled" for useful and efficient service in the grade or class of position last occupied by the employee because of disease or injury, instead of the more lenient disability requirement contained in 5 U.S.C. § 8337(a) (1981), which provides that an employee is considered disabled only if found by the OPM to be unable, because of disease or injury, to render useful and efficient service in the employee's position.*

---

* Title 5 U.S.C. § 8337(a) was amended by Congress on December 5, 1980, effective March 5, 1981, by Public Law 96–499, 94 Stat. 2606, to provide as follows:

DISABILITY RETIREMENT ELIGIBILITY SEC. 403.(a) Section 8337(a) of title 5, United States Code, relating to disability retirement, is amended to read as follows:

"(a) An employee who completes 5 years of civilian service and has become disabled shall be retired on the employee's own application or on application by the employee's agency. *Any employee shall be considered to be disabled only if the employee is found by the Office of Personnel Management to be unable, because of disease or injury, to render useful and efficient service in the employee's position* and is not qualified for reassignment, under procedures prescribed by the Office, to a vacant position which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service. For the purpose of the preced-

ing sentence, an employee of the United States Postal Service shall be considered not qualified for a reassignment described in that sentence if the reassignment is to a position in a different craft or is inconsistent with the terms of a collective bargaining agreement covering the employee. A Member who completes 5 years of Member service and is found by the Office to be disabled for useful and efficient service as a Member because of disease or injury shall be retired on the Member's own application. An annuity authorized by this section is computed under section 8339(g) of this title, unless the employee or Member is eligible for a higher annuity computed under section 8339(a)–(e) or (n).".

*(b) Section 8331 of title 5, United States Code, is amended by striking out paragraph (6).*

*(c) The amendments made by this section shall take effect on the 90th day after the date of the enactment of this Act.* [March 5, 1981]. (Emphasis Supplied)

We do not agree for the reasons set out below.

■ The record shows that the petitioner resigned December 8, 1980, and filed her disability application on January 7, 1981. At the time of her resignation, as well as on the date she filed her application, 5 U.S.C. § 8331(6) was in full force and effect and specified the requirements as to disability for an employee to receive a disability retirement. The petitioner was bound by this statute and had to comply with its provisions in order to receive disability retirement benefits. She contends that because § 8337(a) (1981) repealed § 8331(6) on March 5, 1981, while her application was pending and before the OPM and MSPB had decided her case, the Board should have applied § 8337(a) (1981) to her case instead of the repealed § 8331(6), and in failing to do so the Board applied the wrong law and thereby committed an error of law. We are not persuaded by this argument. Whatever disability retirement rights petitioner had were acquired during the period of her employment and were governed by § 8331(6), the law in existence at the time she resigned from her position and at the time she filed her application. It should be remembered that petitioner ceased to be a Government employee on December 8, 1980, when she resigned. Accordingly, it would have been an error for the Board to have applied § 8337(a) (1981) to petitioner's case, because it did not become law until March 5, 1981, almost three months after petitioner had resigned and was no longer an employee. We hold that the Board did not apply the wrong law in deciding petitioner's case.

■ Petitioner makes the further argument that her appeal to the MSPB from the decision of the OPM did not occur until June 17, 1982, and, therefore, the new law (§ 8337(a) (1981)) which was in existence at that time, should have been applied to her case by the Board instead of § 8331(6) of the former law. The date of her appeal to the MSPB is not controlling. The Board correctly applied § 8331(6) that was in effect when she resigned on December 8, 1980, and also in effect on January 7, 1981, the date she filed her application.

Another contention of the petitioner is that the presiding official was biased and prejudiced against her as shown by his finding that she had been involved in an altercation with her supervisor and that was the reason she resigned instead of health reasons. It is well settled that in order to show bad faith on the part of a Government official, the petitioner must submit "well-nigh irrefragable proof" to sustain the charge, as it is presumed that Government officials act in an appropriate and lawful manner in the discharge of their duties. *See Kalvar Corp., Inc. v. United States*, 543 F.2d 1298, 1301–1302 (Ct.Cl. 1976), *cert. denied*, 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977). The petitioner did not prove this allegation to be true. Besides, the presiding official held that petitioner's motivation for resigning was immaterial to her application for disability retirement.

■ The petitioner complains further that she did not get a fair trial because no official of the OPM attended the Board hearing. We know of no law, rule or regulation that requires officials of the OPM to attend MSPB hearings. Besides, the petitioner does not show how she was harmed by the absence of the OPM officials.

■ Additionally, petitioner says it was error for the Board to delay its decision more than 120 days after the appeal was filed. The record shows that the appeal was filed on June 18, 1982, and a hearing was held on July 28, 1982. The presiding official decided the case on May 25, 1983. The petitioner cites a letter from the MSPB, dated June 17, 1982, attached to her pro se memo in lieu of oral argument, which states that it is the policy of the Board to complete action on an appeal within 120 days after the petition for appeal is filed. However, she acknowledges in her informal brief that the reason for the delay was the involvement of the presiding official with the nationwide air controllers' strike during the period of delay. While this delay is regrettable, it is understandable in view of the overwhelming glut of cases created by thousands of air control-

lers who were filing appeals with the Board at this time from agency discharge orders. The letter from the Board relied on by petitioner merely stated the policy and usual practice and procedure of the Board, which was not a law or regulation that it was required to observe or follow. Neither the presiding official nor the Board was required to issue a decision within any given time period. We conclude there was no error in this delay. Petitioner has not shown how she was harmed by this delay. If she had won her case, she would have received retirement benefits retroactively to the beginning of the retirement period, and, on the other hand, since she did not receive a favorable decision, the delay was immaterial.

Finally, petitioner argues that a procedural error was committed when Ann M. Segars, who did not hear the case, signed the name of Monroe Balton, who was the presiding official, to the decision denying petitioner's application. As pointed out above, officers of the Government are presumed to discharge the duties of their offices in a lawful and proper manner. *See Kalvar Corp., Inc. v. United States, supra.* This presumption is valid and binding unless "well-nigh irrefragable proof" is offered to rebut or overcome it. The petitioner failed to carry this burden. Therefore, we must assume that the decision was signed with proper authority. Here again, the petitioner has not shown how she was harmed by the manner in which the decision was signed. In any event, if there was any error in the signing of the presiding official's decision, it was cured by the decision of the full Board on May 8, 1984, in which it approved the decision of the presiding official and denied petitioner's application.

We have carefully reviewed the record and have concluded that there have been no legal or procedural errors committed by OPM or the MSPB in processing petitioner's case. When she filed her application with OPM she was allowed to submit documentary evidence relative to her alleged disability. OPM made findings on this evidence and twice considered it along with petitioner's application, and each time ruled that the evidence did not prove that she was disabled from performing useful and efficient service in her position, and thereupon disallowed her application. Thereafter she appealed to the MSPB which granted her a hearing. She appeared and testified and offered other evidence which was received by the Board. At the conclusion of the hearing, the Board made findings of fact upon which it concluded, as OPM had previously done, that petitioner had not proven by a preponderance of the evidence that she was disabled from performing useful and efficient service as a Postage Due Technician. Accordingly, the Board affirmed the decision of OPM. There was no legal or procedural error nor substantial departure from important procedural rights in these proceedings.

In our view, there was no misconstruction by OPM or MSPB of governing legislation applicable to petitioner's case. The requirements of 5 U.S.C. § 8331(6) defining disability of an employee were carefully followed, as were the procedural provisions of 5 U.S.C. § 8347 and those of other statutes and regulations.

We next consider the question of whether the Board, in appraising the materials before it, made an error going to the heart of the administrative determination. The Board had before it the testimony of petitioner and the medical evidence she submitted, all of which was carefully considered. The medical evidence consisted of reports from Dr. Kennedy and Dr. Allen which confirmed petitioner's complaints, but which the Board concluded did not show or indicate that petitioner had a disabling condition. We cannot substitute our judgment on medical evidence for a determination of the Board. *Gaines v. United States,* 158 Ct.Cl. 497, 502, *cert. denied,* 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962). We find no error going to the heart of the administrative determination.

We hold that the requirements of the *Scroggins* rule, as approved by the Supreme Court in *Lindahl, supra,* have been met, and that there is neither legal nor

procedural error, "a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administration" present in the case. Accordingly, petitioner is not entitled to recover and the decision of the MSPB is *affirmed.*

AFFIRMED.