James J. HODGES, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–1018C.

United States Court of Federal Claims.

March 5, 1996.

---

**2.** Plaintiffs' amended complaint does not restate all allegations of the original.

Raymond C. McRorie, Fayetteville, NC, for plaintiff.

Jennifer Hong, Washington, DC, with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen and Assistant Director James M. Kinsella, for defendant. Lieut. Col. David L. Hayden, Maj. Brad Page, and Capt. Michael E. Smith, Department of the Army, of counsel.

## *OPINION*

LYDON, Senior Judge:

This military pay case is before the court on defendant's motion to dismiss, or in the alternative, motion for summary judgment, and plaintiff's cross-motion for summary judgment. The parties have agreed that there are no material facts in dispute; indeed, plaintiff accepts, with minor exceptions, defendant's statement of facts.

### FACTS

Plaintiff, James J. Hodges, entered the United States Army (Army) on February 25, 1975, and served continuously on active duty until he was administratively discharged on November 8, 1990. On March 23, 1987, plaintiff reenlisted in the Army for a six year term that would have expired on March 22, 1993.

In August 1989, plaintiff was a Sergeant First Class (grade E–7), assigned to the 10th Signal Battalion, 10th Mountain Division (Light Infantry), Fort Drum, New York. On August 25, 1989, as part of a random urinalysis conducted by the Army, plaintiff submitted a urine sample. Five days later, plaintiff's sample was subjected to a radioimmunoassay initial screening and tested positive for the marijuana metabolite tetrahydrocannabinol (THC). On September 7, 1989, the screening test was confirmed by gas chromatography/mass spectrometry. On October 20, 1989, the test results were again reconfirmed and again tested positive for marijuana metabolites.

On October 24, 1989, Major Tomlinson, the acting Battalion Commander, presented

plaintiff with an Article 15[1] and read the charge, a violation of Uniform Code of Military Justice (UCMJ) Article 112a, wrongful use of marijuana. Plaintiff was advised of his various rights under Article 15 proceedings and told he had forty-eight hours to decide whether to accept the Article 15 or demand trial by court-martial. Plaintiff acknowledged that he had been afforded the opportunity to consult with counsel, did not demand trial by court-martial, and requested a closed hearing. On October 26, 1989, the Article 15 hearing was held. After considering the evidence, Major Tomlinson found plaintiff had used marijuana in violation of Article 112a, and imposed a punishment of forfeiture of $892 for two months and extra duty for forty-five days. In early November 1989, plaintiff submitted an appeal of the Article 15 punishment, asserting a passive inhalation defense, that is, he tested positive because he had been in close proximity to others who were smoking marijuana. Plaintiff claims that occupants—lower ranking soldiers—of his personal vehicle were smoking marijuana for a period of time but that he did not smoke any.[2] That appeal was denied on November 21, 1989.

On November 20, 1989, plaintiff was advised that Company Commander, Captain Paul J. Parish, had initiated separation proceedings under the provisions of Army Reg. 635–200, Chapter 14, based on plaintiff's illegal use of marijuana.[3] Captain Parish later notified plaintiff that he was recommending plaintiff be separated from the Army with a General Under Honorable Conditions discharge. Pursuant to Army Reg. 635–200, ¶ 2–2, Captain Parish submitted his recommendation for separation up the chain of command. In mid-February 1990, both Lieutenant Colonel Levister, the Battalion Commander, and Colonel O'Connor, the Brigade Commander, concurred with Captain Parish's recommendation and Colonel O'Connor appointed an administrative separation board to hear plaintiff's case.

The administrative board convened on June 11, 1990. Plaintiff was represented by both military and civilian defense counsel. The Army called only one witness, plaintiff's Battalion commander, Lieutenant Colonel Levister, who recommended that the Army not retain plaintiff because:

> [A]n NCO has a responsibility above and beyond that of the lower ranking soldiers. He's supposed to set the example. The Army has a clearly defined policy on drug abuse, and I personally do not believe that Sergeant Hodges ... met his responsibility to the Army and to himself by compromising himself or allowing himself to be compromised in a situation that he controlled.

> \*  \*  \*  \*  \*  \*

> [E]very month in the command formation I emphasis [sic] DUI and drug abuse. And as an incentive to the soldiers, we have ninety days no incidents, it's a training holiday. So everybody understands that

1. Under Article 15 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 815 (1982), a commander may impose nonjudicial punishment to correct misconduct in violation of the UCMJ. Such conduct may result from intentional disregard of or failure to comply with prescribed standards of military conduct. See Army Reg. 27–10, ¶ 3–3.

2. Plaintiff's military counsel explained the circumstances surrounding the passive-inhalation defense as follows:

   > SFC [Sergeant First Class] Hodges did not actively ingest marijuana. He was, however, around the substance, while it was being actively ingested by other persons, for some time in an enclosed area. While in the presence of other persons who were actively ingesting the substance, SFC Hodges did not gain possession of the substance or encourage anyone to

use it. In fact, he unsuccessfully discouraged these persons from using the substance. Nevertheless, he was in the enclosed area with the other individuals who were ingesting the substance and, unbeknownst to him, apparently passively ingested enough of the second hand smoke to show positive on the urinalysis test. Like the greater percentage of soldiers who do not possess or use illegal drugs, SFC Hodges was under the impression that only an active, knowing use of marijuana would result in a positive urinalysis test....

3. Under Army Reg. 635–200, ¶ 14–12c, soldiers are subject to separation for commission of a serious offense. Paragraph 14–12c(2) states that "[a]buse of illegal drugs is serious misconduct." Subparagraph c(2)(a) states that first-time drug offenders in the grades of E–5 to E–9 (plaintiff was an E–7) will be processed for separation upon discovery of a drug offense.

fact that I want to meet the Army's goals, and that we have a responsibility to ensure that we do not have drug abuse in 10th Signal Battalion and 10th Mountain Division. And Sergeant Hodges, not being a new member to the unit and ... being aware of that Army policy, and as a leader ... of all people, should have ... understood his responsibilities.

Plaintiff called six witnesses in his defense who all testified that he was a good soldier and should be retained in the service. After deliberating for an hour, the administrative board announced its findings. The administrative board found that plaintiff had used marijuana, that he had engaged in serious misconduct of a nature to bring discredit upon the armed forces, that he "is undesirable for further retention in the military," and that he should be discharged with a General Under Honorable Conditions discharge.[4]

In July 1990, plaintiff's military and civilian counsel appealed the administrative board's findings and recommendations to Brigade Commander Colonel O'Connor. On August 29, 1990, Colonel O'Connor denied both appeals and forwarded all matters submitted by plaintiff to Headquarters, Department of the Army (HQDA), recommending that plaintiff be separated from the Army.

On November 8, 1990, plaintiff was separated from the Army with a General Under Honorable Conditions discharge. Plaintiff had served nineteen years, two months, and eight days of active service.

In early March 1993, plaintiff petitioned the Army Board for Correction of Military Records (ABCMR) for relief. In that petition, plaintiff contended, *inter alia:* (1) that contrary to applicable regulations, the government representative at the administrative hearing improperly advised the board members that the government had no burden of proof or persuasion; (2) that in violation of applicable regulations the government representative at the administrative hearing improperly argued before the board members that plaintiff's selection of nonjudicial pro-

ceedings under Article 15 rather than demand trial by court-martial was equivalent to an admission of guilt; and (3) that the administrative board's recommendation that plaintiff be separated from the service with a general discharge was arbitrary and capricious in that such recommendation was not supported by a preponderance of the evidence.

On April 6, 1994, the ABCMR convened to consider plaintiff's petition. The ABCMR denied relief, finding that plaintiff "has failed to submit sufficient relevant evidence to demonstrate existence of probable error or injustice." The ABCMR listed the following findings in its Memorandum of Consideration:

1. The urinalysis of the specimen submitted by the applicant on 25 August 1989 is presumed to be legally and scientifically supportable to prove that he had unlawfully used illegal drugs, in violation of the UCMJ. The applicant has not provided any evidence to overcome that presumption.

2. The NJP [nonjudicial punishment] imposed on 26 October 1989 was appropriate in view of the serious nature of drug use. Accordingly, there is no basis for setting aside or removing it from his records.

3. The contentions of the applicant and his counsel have been noted by the Board. However, they are not supported by either evidence submitted with the application or the evidence of record. The discharge process was in accordance with applicable law and regulations with no indication of procedural errors which would tend to jeopardize his rights.

4. Irrespective of the urinalysis, his conduct of allowing others to illegally use drugs in his personal vehicle, especially while he was in control of the vehicle, is unconscionable and violates that trust placed in him as a soldier and NCO.

\*     \*     \*     \*     \*     \*

6. Inasmuch as the rules of evidence are not applicable before administrative separation boards, the Board finds no merit to

---

4. Separation from service under Chapter 14 is normally characterized, Under Other Than Honorable Conditions.

the contentions that the [administrative] board was biased towards the applicant based on the comments of the recorder and their reliance on a written affidavit of the forensic toxicologist without expert testimony.

7. It must be presumed that the applicant's performance of duty was given full recognition in the awarding of a general discharge, when normally a discharge under other than honorable conditions is awarded for drug abuse.

\*   \*   \*   \*   \*   \*

9. Careful consideration has been given to the applicant's service and the support of his chain of command. However, the offense in question was committed by a senior NCO and is considered too serious to warrant relief.

On November 21, 1994, plaintiff filed suit in this court seeking the following relief: that his November 8, 1990 discharge be vacated; that he receive constructive credit from the date of his discharge until he reached retirement eligibility; that he be issued an honorable discharge; that he receive back active duty pay from the date of his discharge until he reached retirement eligibility; that he be placed on the active duty retired list and awarded back retired pay from the date he reached retirement eligibility to the date of this court's decision; and for other relief as this court deems appropriate.

## DISCUSSION

### 1. Motion To Dismiss—Jurisdiction and Justiciability.

Defendant moves to dismiss plaintiff's claim for retirement benefits, arguing that because the determination of whether plaintiff is entitled to retirement is a discretionary one under 10 U.S.C. § 3914 (1994),[5] plaintiff has no statutory or regulatory entitlement to money damages. Defendant argues that a person may not sue under the Tucker Act for a monetary entitlement contingent upon a

discretionary determination, unless an individual with the requisite authority has made that discretionary determination. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); and *Rice v. United States,* 31 Fed.Cl. 156, 162 (1994), *aff'd.,* 48 F.3d 1236 (Fed.Cir.1995) (Table). Thus, defendant argues, because plaintiff had been discharged from the Army before achieving twenty years of military service, no retirement benefits are due and owing. Furthermore, defendant argues, even if plaintiff's discharge is deemed to be improper, and even if all other relief were accorded so that plaintiff accrues in excess of twenty years of service, plaintiff would have no legal right to retirement benefits, because the decision to retire plaintiff is within the Secretary's discretion. In this case the Secretary has not made the discretionary determination with respect to plaintiff, and until such a determination is made, defendant argues, no statute mandates the payment of retirement pay.

■ The court has jurisdiction to review decisions of military correction boards regarding service members' entitlement to back pay or other monetary relief associated with an alleged improper discharge. The Federal Circuit in *Mitchell v. United States,* outlined this court's jurisdiction in military pay cases. The court stated in part:

> By statute, the Claims Court may, in appropriate military back pay cases, "provide an entire remedy," including "restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2). The Claims Court has, in fact, ordered ... placement in correct retirement status....

930 F.2d 893, 896 (1991) (en banc) (citing *Casey v. United States,* 8 Cl.Ct. 234 (1985)). In *Casey,* the plaintiff was discharged from the Army prior to the expiration of his enlistment period, and after seventeen years of service. The court concluded that Casey's discharge was illegal, and that Casey was entitled to all back pay, allowances and benefits payable from date of discharge to expira-

---

5.  10 U.S.C. § 3914 provides:

Under regulations to be prescribed by the Secretary of the Army, an enlisted member of

the Army who has at least 20, but less than 30, years of service ... may, upon his request, be retired.

tion date of his then current reenlistment, and was entitled to have his records reflect his honorable discharge as of enlistment expiration date, after twenty years of active duty service, with appropriate retirement benefits due from retirement date through date of judgment. *Casey,* 8 Cl.Ct. at 243.

■ Plaintiff, contests the ABCMR's decision denying his request for relief. While his request for relief is broad and includes a claim for retirement benefits he obviously is not seeking direct review of a section 3914 Secretarial retirement decision because no such decision has yet been rendered. It was as a result of plaintiff's allegedly improper discharge that he did not have an opportunity to request retirement under section 3914. One could reasonably assume that when an enlisted service member requests to be retired pursuant to section 3914, the Secretary will grant such request absent any reason against doing so. *See Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979) (stating presumption that administrators of the military discharge their duties correctly, lawfully and in good faith). Thus, the court has subject matter jurisdiction over plaintiff's claim for relief from his alleged unlawful discharge which, if successful, will of necessity bring into play during *ad damnum* proceedings his entitlement to retirement benefits.

■ Next defendant contends that plaintiff's complaint fails to state a claim upon which relief can be granted because it presents a nonjusticiable issue, *i.e.,* there are no "tests and standards" against which the court can "measure" the conduct of the Secretary in separating plaintiff from the service. *See Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.1988) (citations omitted), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988) (holding that "[a] controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide under tests and standards which they can soundly administer within their special field of competence'"). Defendant argues that

the statutes and regulations relevant to this case which relate to the separation of enlisted personnel, do not establish meaningful "tests and standards" against which this court can determine whether the Secretary properly separated plaintiff from the Army.

Pursuant to 10 U.S.C. § 1169 (1994),[6] the Secretary of the Army has promulgated Army Reg. 635–200, setting forth various requirements and guidelines pertaining to the separation of enlisted personnel. The section entitled "Guidelines on Separation" provides:

When deciding retention or separation in a case, consider the following factors:

(1) The seriousness of the events or conditions that form the basis for initiation of separation proceedings. Also consider the effect of the soldier's continued retention on military discipline, good order, and morale.

(2) The likelihood that the events or conditions which led to separation proceedings will continue or recur.

(3) The likelihood that the soldier will be a disruptive of undesirable influence in present or future duty assignments.

(4) The soldier's ability to perform duties effectively now and in the future, including potential for advancement or leadership.

(5) The soldier's rehabilitative potential.

(6) The soldier's entire military record.

Army Reg. 635–200, ch. 1, § II, ¶ 1–17d. Chapter two, entitled "Procedures for Separation," requires a separation board to first "determine whether each allegation in the notice of proposed separation is supported by a preponderance of the evidence," and then to "determine per chapter 1, section II [quoted above in part], whether the findings warrant separation with respect to the reasons for separation." *Id.* at ch. 2, § III, ¶ 2–12a(1) and (2).

It is the latter determination of whether the board's findings warrant separation with respect to the reason for separation that

---

6. 10 U.S.C. § 1169 provides in part:
No regular enlisted member of an armed force may be discharged before his term of service expires, except—

(1) as prescribed by the Secretary concerned. . . .

defendant contends presents a nonjusticiable issue to the court. Furthermore, defendant argues, even if the court were able to review the question of the sufficiency of the "proof" of misconduct, the court could not ultimately review the question of whether plaintiff's discharge was proper. The court notes that it is well established that:

> [R]esponsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.

*Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983) (footnotes omitted). The Federal Circuit, however, has also consistently held that "a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *See Adkins v. United States,* 68 F.3d 1317, 1323 (Fed.Cir.1995) (emphasis in original) (citations omitted).

Defendant's argument, however, obscures the first step of the separation board's procedure, which is a prerequisite to the second step. Before the board deliberates on whether an enlisted member should be separated, the board must "determine whether each allegation in the notice of proposed separation is supported by a preponderance of the evidence." Army Reg. 635–200, ¶ 2–12a(1). Plaintiff, in essence, argues that the separation board did not, in fact, apply the correct burden of proof in violation of Army regulations and therefore, improperly separated plaintiff from the Army. The Secretary is "bound to follow its own regulations if it chooses to implement some." *Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994). Because the issue of whether defendant followed applicable law and regulations is justiciable, defendant's motion to dismiss is denied.

## 2. Summary Judgment.

■ As noted above, "Judicial deference to administrative decisions of fitness for duty of service members is and of right should be the norm...." *Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir.1985). Therefore, the scope of judicial review is narrow. Plaintiff must prove by cogent and clearly convincing evidence that the ABCMR's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986). Plaintiff must prove both that (1) a material legal error or injustice in the correction board proceeding and (2) an adequate nexus between the error or injustice and his separation from service. *Hary v. United States,* 223 Ct.Cl. 10, 15, 618 F.2d 704, 706 (1980). Furthermore, plaintiff must overcome the presumption that "administrators of the military, like other public officers, discharge their duties correctly, lawfully and in good faith." *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 813 (citations omitted). Although the court might disagree with the board's decision, it cannot substitute its own judgment for that of the board if reasonable minds could reach differing resolutions of a disputed fact. *Heisig,* 719 F.2d at 1156.

■ Plaintiff argues that the ABCMR's decision was arbitrary and capricious because the "evidence of record clearly" establishes that the recorder [7] erroneously argued before the separation board that the government bore no burden of proof, and that the president of the board adopted this standard; and that the recorder erroneously advised the board members, in violation of Army Reg. 27–10, that plaintiff's initial selection of nonjudicial proceedings was in effect an acknowledgment of guilt.

In support of his claim that the president of the board adopted the wrong standard of proof, plaintiff directs the court to the argument during the separation board hearing over his motion to dismiss the charge of serious misconduct where the following exchange occurred:

---

7. The duties of the board recorder during a hearing include reading the appointment memorandum, noting for the record the presence or absence of board participants, administering oaths, executing all orders of the board, and conducting the presentation of evidence and examination of witnesses to bring out all the facts. Army Reg. 15–6, ¶ 5–36.

MR. GOODSITE [plaintiff's civilian counsel]: At this time, Mr. President, we just move to dismiss the charge of serious misconduct against Sergeant First Class James J. Hodges ... on the grounds and for the reasons that the ... Prosecution has not met it's burden of proof under established law to sustain a finding of ... to negate the finding of passive inhalation as a defense.... And secondly, in failing to call ... any personal witnesses here to testify, with personal knowledge interpreting or explaining the meaning of the urinalysis tests.

CAPTAIN WALKER [Recorder]: Sir, ... I am not the Prosecution. I'm the Recorder. And there is not a burden of proof that he is referring to. The Board is a fact-finding Board here. The Board has to make a determination whether or not he's to be separated based upon the litigation packet, all of the information that everyone here presents.

MR. GOODSITE: ... I mean this is a quasi-judicial proceeding, and that the Board has to make a finding of fact of serious misconduct. Misconduct, so much that ... if in fact, whether or not we're applying civilian or military rules, that it be suggested that a crime was committed. To that extent, you Honor, there's a certain burden that the Recorder or the Prosecution has, to show before this Board, that indeed that a serious misconduct has occurred....

CAPTAIN WALKER: Sir, ... you've got the litigation packet before you. There is sufficient information in the litigation packet to establish ... the offense in question.

MAJOR SPIRIDIGLIOZZI [President of the separation board]: I know that ... this is not ... a legal proceeding in accordance with ... all the ... burdens of proof, and ... the things that go along with ... a formal court, Court–Martial, as we have in the military, and we're not bound by those rules. This is a Board to determine whether or not a service member should be eliminated from the service based on his duty performance and based on the criteria set forth in the applicable regulation. I don't believe the Government has, has to me[e]t a burden of proof for the Board to continue.... [I]t's merely presenting the facts to us, and we'll take those facts and make a recommendation forward [sic] as to whether or not the service member should be eliminated or retained. We, we don't make final decisions. We make recommendation[s] and ... I feel ... we have to continue with the Board, and I feel it's justified to everybody involved that we continue with the board, listen to the arguments presented, and then we make our recommendations.

The statements quoted above do not rise to the level of cogent and clearly convincing evidence that the board adopted a burden of proof other than that required by regulation, *i.e.,* a preponderance of the evidence. Even if the court assumed that the recorder argued the wrong standard of proof before the board, there is no indication that the board adopted any standard other than that required by regulation. As noted above, *supra,* Army Reg. 635–200, ¶ 2–12a(1) requires the board to apply the preponderance of the evidence standard of proof. In the absence of evidence to the contrary the court must presume that the separation board performed its official duties properly. *Biddle v. United States,* 186 Ct.Cl. 87, 104 (1968). The president's comments were made in response to plaintiff's attempt to dismiss the charges before the hearing was concluded. The president was merely indicating that the Army did not have to meet any burden in order for the proceedings to continue. Indeed, further review of the transcript of the hearing, indicates that the recorder did argue the correct standard to the separation board. In his closing argument he stated:

The Board's burden is to determine if each allegation in the supporting packet is supported by *a preponderance of the evidence.* That is, if each allegation is more likely that [sic] not, to be true. That's the Board, the Board's burden here. There is not a criminal standard here. The Board must ... the Board must determine whether each allegation is supported by *a preponderance of the evidence.* (emphasis added)

Additionally, plaintiff stated during his surrebuttal that "The burden, by the preponderance of the evidence, is on the Government to prove that [plaintiff] actively ingested marijuana." Thus, both parties, in fact, argued the correct burden of proof. Consequently, the court concludes that plaintiff's claim that the separation board applied the wrong burden of proof is not supported by the record.

Likewise, plaintiff has failed to persuade the court that the separation board imputed guilt on the plaintiff due to allegedly improper argument by the recorder. Plaintiff contends that the recorder's remarks concerning his "acceptance" of an Article 15 constituted improper and prejudicial argument, in that the "acceptance" of nonjudicial punishment in lieu of demanding a trial by court-martial is not an admission of guilt. For example, during rebuttal, in response to plaintiff's submission of a memorandum of law asserting that the in-court testimony of an expert is required to interpret and explain drug test results, the recorder argued:

> This Memorandum of Law regards, once again, a Court–Martial, and ... this would have been a good argument in a Court–Martial ... where there's prosecution going on.... Where the Prosecutor is held to ... a much higher standard.
>
> Here, you have the urinalysis, the fact that it was positive and you, you already have the fact that an Article 15 was accepted for this. If, if this had gone to a Court–Martial there would have been no Article 15. There would have been no acceptance of it. We would have the story from the [plaintiff] from the beginning, that ... there was no substance to the charge, there would have been no acceptance of any Article 15.

Plaintiff alleges that this remark violates Army regulations, specifically Appendix B to Army Reg. 27–10 which provides in part:

> If you do not demand trial by court-martial, you must then decide whether you want to present witnesses or submit other evidence in defense, extenuation and/or mitigation. Your decision not to demand trial by court-martial will not be considered as an admission that you committed the offense(s): you can still submit evidence in your behalf.

This excerpt is a guideline for commanders conducting nonjudicial punishment proceedings, and merely indicates that acceptance of an Article 15 did not preclude plaintiff from presenting evidence on his behalf during the Article 15 hearing or subsequent proceedings. The court is not aware that plaintiff proffered any reliable evidence which raises any questions about the propriety or accuracy of the testing process and the results of such tests as they pertain to plaintiff at the Article 15 hearing or in subsequent proceedings. Even if the court deemed the recorder's argument improper, there is no evidence that the administrative board was in fact influenced by such an argument, and therefore the error, if such it be, is harmless. There is a presumption that public officials act in good faith in discretionary matters, and it takes strong proof to conclude that their decisions are otherwise. *Greenway v. United States,* 175 Ct.Cl. 350, *cert. denied,* 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108 (1966); *Collins v. United States,* 24 Cl.Ct. 32, 39 (1991), *aff'd.,* 975 F.2d 869 (Fed.Cir.1992) (Table). Plaintiff has failed to offer the "well-nigh irrefragable proof" necessary to rebut this presumption. *McEachern v. Office of Personnel Management,* 776 F.2d 1539, 1545 (Fed.Cir.1985). The mere fact that an improper or incorrect argument is made does not mean that such an argument is accepted by a court or board.

Moreover, plaintiff does not provide any support, and the court finds none, for his contention that the recorder's statement was "a clear indication of the existence of doubt concerning whether the evidence before the administrative board established the allegation of wrongfully using marijuana...."

Plaintiff also contends that it was legal error for the ABCMR to presume that the urinalysis which resulted in a positive analysis was "legally and scientifically supportable to prove that [plaintiff] had unlawfully used illegal drugs." Plaintiff argues that there is no authority, judicial or administrative, to support this presumption of "legal and scientific proof."

The Board's use of the word presumption would appear to be taken out of context by plaintiff. While the language of the Board is not as articulate as one would like, it seems clear from the face of the ABCMR's "discussion" that it was not invoking an established legal presumption. The ABCMR stated in part:

> *DISCUSSION:* Considering all the evidence, allegations, and information presented by the applicant, together with the evidence of record, applicable law and regulations, it is concluded:
>
> 1. The urinalysis of the specimen submitted by the applicant on 25 August 1989 is presumed to be legally and scientifically supportable to prove that he had unlawfully used illegal drugs, in violation of the UCMJ. The applicant has not provided any evidence to overcome that presumption.

A more reasonable construction of the Board's use of the word presumption is that in the absence of any other evidence to the contrary, the Board could "presume" on the basis of the existing evidence that the urinalysis process and results were accurate and free from error.[8]

Among the evidence considered by the ABCMR was the report of Major Jeffrey A. Gere, Chief of Forensic Toxicology at the Fort Meade Testing Laboratory, which explained the urinalysis procedures that were used, and rejected plaintiff's passive inhalation defense. It is reasonable to conclude, in the absence of any evidence to the contrary, that the ABCMR was persuaded that Major Gere's report supported the separation board's finding that plaintiff wrongfully used marijuana.[9] It bears repeating that plaintiff was represented before the administrative board by both military and civilian counsel. It was plaintiff's burden to establish deficiencies, if any, in the testing process and it was also plaintiff's burden, if the testing procedure was accurate and correct, to establish that passive inhalation was responsible for plaintiff's testing positive for marijuana. Plaintiff failed to carry his burden in both regards.

Similarly, plaintiff argues that the Army failed to establish by a preponderance of the evidence that plaintiff was guilty of the alleged misconduct because it failed to present any expert witness in the area of biochemical testing, contrary to decisions of the United States Court of Military Appeals and other applicable law. In support of his argument, plaintiff cites *United States v. Murphy*, 23 M.J. 310 (C.M.A.1987), for the proposition that there must be in-court expert testimony to explain and interpret drug test results in order for a finding of guilty as to wrongful use of marijuana. In *Murphy*, the government offered no expert testimony concerning the meaning, in terms of marijuana use, of the results of tests like those performed in the instant case. The court held:

> [W]here scientific evidence is relied upon to prove the use of marihuana, the Government may not presume that the judge or members [of the Naval Service] are experts capable of interpreting such evidence.... Expert testimony interpreting the tests or some other lawful substitute in the record is required to provide a rational basis upon which the factfinder may draw an inference that marijuana was used.

---

8. To "presume" is to believe or accept upon probable evidence. A "presumption" is a legal device which operates in the absence of other proof to require that certain inferences be drawn from the available evidence. *Black's Law Dictionary* 1185 (6th ed.1990).

9. In his affidavit, Major Gere discussed presumptions established by Department of Defense (DOD) policy. Major Gere explained that although Radioimmunoassay can detect the presence of marijuana at a level of five one-billionths of a gram per one cubic centimeter of urine (five nanograms per milliliter), DOD policy mandates that only specimens which are detected as having a level of over 100 nanograms per milliliter are flagged as "presumptive positives." Furthermore, to be reported positive for marijuana use, a specimen must equal or exceed the DOD mandated cutoff level of fifteen nanograms per milliliter in the Gas Chromatography/Mass Spectrometry confirmation test. Additionally, Major Gere described "a hierarchy of procedures whereby technical and legal accuracy and acceptability of all pertinent documentation are reviewed at many levels in the system to insure that all results reported from the lab are forensically supportable." Major Gere concluded that passive inhalation will not cause a person to test positive by DOD standards.

*Id.*, at 312. Plaintiff's reliance on *Murphy* is misplaced. First, *Murphy* was a court-martial case with a different set of controlling regulations. The case at bar is an Article 15 administrative separation case. It must be noted that the regulations applicable in this case provide that "the rules of evidence for court-martial and other judicial proceedings are not applicable before an administrative separation board." Army Reg. 635–200, ¶ 2–11a. Moreover, the function of administrative boards is primarily investigative. *See Brown v. United States*, 184 Ct.Cl. 501, 510–11, 396 F.2d 989, 995–96 (1968) (noting that board hearings are investigatory in nature). The administrative board, in its role as fact-finder, was required to determine whether the allegation that plaintiff used marijuana "was supported by a preponderance of the evidence." *Id.*, at ¶ 2–12a(1). The Army supported its allegation that plaintiff used marijuana with the results of plaintiff's urinalysis *and* Major Gere's report relative thereto, which concluded that passive inhalation will not cause a person to test positive by Department of Defense standards. In response, plaintiff submitted articles from various medical journals to support his defense of passive inhalation.[10] The administrative board, presumably, considered all the evidence in reaching its conclusion that plaintiff actively ingested marijuana. Based upon a review of the record, the court concludes that plaintiff has not proved by clear and convincing evidence that the ABCMR's decision was contrary to law or unsupported by substantial evidence.

■ Finally, plaintiff argues that the ABCMR's decision was arbitrary and capricious because evidence was presented proving plaintiff worthy of retention under the criteria set forth in Army Reg. 635–200, ¶ 1–17d. The ABCMR considered this evidence as indicated in its Memorandum of Consideration. The arbitrary and capricious standard of review, however, does not require a reweighing of the evidence, but rather a determination whether the conclusion being reviewed is supported by substantial evidence. *Heisig*, 719 F.2d at 1157. Further, such an analysis by the court would involve delving into the merits of the Army's determination on who is fit or who is the most fit for continued Army Service. The court under these circumstances cannot and will not go into the merits of the case. *See Adkins*, 68 F.3d at 1322–23. The court is not convinced that plaintiff has sustained his burden of showing by cogent and clearly convincing evidence that the ABCMR was arbitrary or capricious in finding that he was unfit for service. While this court may disagree with the ABCMR about whether or not a specific situation was unjust, it will not substitute its judgment for the ABCMR's when reasonable minds could reach differing conclusions. *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813–14.[11]

10. In his report, Major Gere addressed these articles which indicate that a person can test positive because of passive inhalation. Major Gere explained:

> It has been shown that under severe experimental conditions a person can become urine-positive for THC due to passive inhalation. In a recently concluded study by the National Institute[] on Drug Abuse, five men were enclosed in an airtight room with dimensions of 6' by 8' by 8', and subjected to the smoke of 16 marijuana cigarettes smoked by a machine over the period of an hour. The smoke was so thick that the men reported feeling high; they even had to wear goggles to prevent eye irritation. This procedure was repeated once a day for 5 days, and on the fourth day, one of the men finally became positive at the relatively high cutoff level that we use. These conditions seem a little bit unrealistic. As a matter of fact, the authors themselves stated that it seemed unlikely that a person would knowingly tolerate these severe conditions.

> Other experiments that have been conducted under more realistic conditions (for instance, a couple of marijuana cigarettes smoked in a closed automobile) have shown that only very low levels of THC metabolites in urine can be detected under these conditions; such a specimen would be negative by DOD standards.

11. The essence of plaintiff's claim, it seems, is a perceived injustice from an alleged single instance of use of marijuana over a career spanning over 19 years. The Board recognized plaintiff's years of good service but felt that plaintiff's experience and years of good service were compromised because his leadership role in the "war on drugs" was diminished or indeed extinguished by this drug episode. As noted in the main text, a separation under Chapter 14 is usually characterized, Under Other Than Honorable Conditions, yet plaintiff was separated with a General Under Honorable Conditions. Thus, his years of service were recognized by the Board. This court will not sit as a super correc-

## CONCLUSION

After reviewing the administrative record, the court cannot say that the ABCMR's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. The court has considered all of plaintiff's contentions and finds them insufficient in merit to warrant reversal of the ABCMR's decision. Accordingly, the court grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment. The Clerk is directed to enter judgment dismissing the complaint. No costs.

tion board; it is not for this court to second-guess the administrative board in such situations.

*See Skinner v. United States,* 219 Ct.Cl. 322, 330–31, 594 F.2d 824, 829–30 (1979).